UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

NXIVM CORPORATION, EXECUTIVE :
SUCCESS PROGRAMS, INC., ALEX :
BETANCOUT, BARBARA BOUCHEY, CLARE :
W. BRONFMAN, EDGAR BOONE, ELLEN :
GIBSON, SARA R. BRONFMAN, PAMELA :
CAFRITZ, SUZANNE KEMP, WAYNE BATES, :   Oral Argument Requested
LUIS MONTES, and FRANCA DICRENSENZO, :
                                     :
Plaintiffs,                          :   No. 05 CV 01546 (GLS/RFT)
                                     :
          - against -                :
                                     :
JOSEPH J. O'HARA, DOUGLAS RUTNIK, and :
DENISE F. POLIT                      :
                                     :
Defendants.                          :
                                     :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X


**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR AN
ORDER (1) PROHIBITING DEFENDANT JOSEPH J. O'HARA, ESQ. FROM
DISCLOSING PRIVILEGED AND CONFIDENTIAL INFORMATION TO THIRD
PARTIES, (2) REQUIRING THE RETURN OF PLAINTIFFS' FILES (3) COMPELLING
DISCOVERY AND (4) QUASHING THIRD-PARTY SUBPOENA TO O'HARA**


**PROSKAUER ROSE LLP**
Peter J.W. Sherwin (Bar No. 513614)
Scott A. Eggers (Bar No. 514095)
Douglas C. Rennie (Bar No. 513631)
1585 Broadway
New York, NY 10036
Phone: (212) 969-3000
Fax: (212) 969-2900

*Attorneys for the Plaintiffs*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES………...……………………………………………...………iii

PRELIMINARY STATEMENT ........................................................................................1

STATEMENT OF FACTS ................................................................................................3

A.     O'Hara's Attorney-Client Relationship With The Plaintiffs ..............................4

B.     The Plaintiffs Commence An Action Against O'Hara.......................................7

C.     O'Hara's Campaign To Disclose The Protected Information ...........................8

D.     The Court Orders Regarding The Disclosure Of Confidential Information....................12

E.     O'Hara Refuses To Provide Evidence Of His Communications With Third Parties
       Concerning NXIVM...........................................................................................14

ARGUMENT....................................................................................................................15

POINT I.     THIS COURT SHOULD ENTER AN ORDER REQUIRING DEFENDANT
             O'HARA TO COMPLY WITH HIS ETHICAL OBLIGATIONS AND
             PROHIBIT HIM FROM DISCLOSING PRIVILEGED AND CONFIDENTIAL
             INFORMATION ................................................................................................15

       A.     The Court Should Grant A Protective Order Prohibiting O'Hara From Further
              Disclosures Of The Plaintiffs' Protected Information To Third Parties And
              Requiring Him To Return All Files To The Plaintiffs ........................................16

       B.     O'Hara's Conduct Constituted The Practice Of Law And Consequently, He Owed
              Ethical Duties To The Plaintiffs ........................................................................18

       C.     O'Hara's Disclosure Of Client Confidences And Secrets Violated The
              Disciplinary Rules And Establishes Good Cause For The Entry Of A Protective
              Order ..................................................................................................................20

       D.     There Is Good Cause For An Order Compelling O'Hara To Return The Plaintiffs'
              Files To Them Because He Is Obligated To Do So By New York Law And The
              Disciplinary Rules..............................................................................................24

       E.     There Is Good Cause For An Order Requiring O'Hara To Produce His
              Communications With Third Parties Concerning NXIVM And Extending The
              Length Of O'Hara's Deposition So As To Allow Plaintiffs To Discover The
              Extent Of O'Hara's Breaches ............................................................................26

       F.     The Relief Sought Will Not Prejudice The Rights Of Ross................................27

POINT II.      THIS COURT SHOULD ENTER AN ORDER QUASHING ROSS'S SUBPOENA TO O'HARA AS IT REQUESTS THE DISCLOSURE OF PROTECTED INFORMATION ........................................................................28

    A.    The Court Should Not Allow Ross To Depose The Plaintiffs' Former Attorney .28

    B.    Communications Among Plaintiffs, O'Hara And Interfor Are Protected By The Attorney-Client Privilege ....................................................................................29

    C.    The Work Product Doctrine Precludes Disclosure Of Information From Interfor Or O'Hara..........................................................................................................31

    D.    There Has Been No Waiver Of Either Attorney-Client Or Work Product Protection.......................................................................................................34

POINT III.    THE CRIME-FRAUD EXCEPTION IS NOT APPLICABLE............................37

CONCLUSION............................................................................**Error! Bookmark not defined.**

## TABLE OF AUTHORITIES

**Cases**

Andritz Sprout-Bauer, Inc. v. Beazer East, Inc., 174 F.R.D. 609 (M.D. Pa. 1997)...............29, 30

Apple Corps Ltd. v. Inter'l Collectors Soc., 15 F. Supp. 2d 456 (D.N.J. 1998) ..........................39

Blum v. Schlegel, 150 F.R.D. 38 (W.D.N.Y. 1993) ....................................................................33

Connecticut Mut. Life Ins. Co. v. Shields, 18 F.R.D. 448 (S.D.N.Y. 1955)...............................34

Duplan Corp. v. Deering Milliken, Inc., 540 F.2d 1215 (4th Cir. 1976) ...............................33, 36

First Fed. Sav. & Loan Ass'n v. Openheim, Appel, Dixon & Co., 110 F.R.D. 557 (S.D.N.Y. 1986).........................................................................................................................................22

Fry v. McCall, 95 Civ. 1915, 1998 WL 273035 (S.D.N.Y. May 28, 1998)................................38

Garrett v. Metro. Life Ins. Co., No. 95 Civ. 2406 (PKL), 1996 WL 325725 (S.D.N.Y. June 12, 1996).......................................................................................................................... 30, 33, 39

Gidatex, S.r.L. v. Campaniello Imports, Ltd., 82 F. Supp. 2d 119 (S.D.N.Y. 1999) ..................39

Gramm v. Horsehead Indus., Inc., No. 87 Civ. 5122 (MJL), 1990 WL 142404 (S.D.N.Y. Jan. 25, 1990).........................................................................................................................................36

Greig v. Macy's N.E., Inc., 1 F. Supp. 2d 397 (D.N.J. 1998) ......................................................23

Hasbrouck v. BankAmerica Hous. Servs., 187 F.R.D. 453 (N.D.N.Y. 1999) .............................17

Hickman v. Taylor, 329 U.S. 495 (1947).....................................................................................32

Housler v. First Nat'l Bank, 484 F. Supp. 1321 (E.D.N.Y. 1980)...............................................22

Hydraflow, Inc. v. Enidine, Inc., 145 F.R.D. 626 (W.D.N.Y. 1993)...........................................35

In re Agent Orange Prod. Liab. Litig., 821 F.2d 139 (2d Cir. 1987)...........................................17

In re Cendant Corp. Sec. Litig., 343 F.3d 658 (3d Cir. 2003)................................................30, 33

In re Grand Jury Subpoena Duces Tecum Dated Sept. 15, 1993 (Marc Rich & Co.), 731 F.2d 1032 (2d Cir. 1994)...............................................................................................................38

In re In-Store Advertising Sec. Litig., 163 F.R.D. 452 (S.D.N.Y. 1995).....................................38

John Doe, Inc. v. United States (In re John Doe, Inc.), 13 F.3d 633 (2d Cir. 1994) ...................38

Kelly v. Ford Motor Co. (In re Ford Motor Co.), 110 F.3d 954 (3d Cir. 1997)..........................31

Kelly v. Hunton & Williams, No. 97-CV-5631 (JG), 1999 U.S. Dist. Lexis 9139 (E.D.N.Y. June 17, 1999)...........................................................................................................................20

Liberty Envtl. Sys., Inc. v. County of Westchester, 94 Civ. 7431, 1997 WL 471053 (S.D.N.Y. Aug. 18, 1997) ......................................................................................................................38

M & M Med. Supplies & Serv. Inc., v. Pleasant Valley Hosp. Inc., 981 F.2d 160 (4th Cir. 1992) ..............................................................................................................................................16

Maldonado v. New Jersey, 225 F.R.D. 120 (D.N.J. 2004) ...................................................35, 36

Maloney v. Sisters of Charity Hosp., 165 F.R.D. 26 (W.D.N.Y. 1995) ....................29, 32, 34, 37

Marrocco v. General Motors Corp., 966 F.2d 220 (7th Cir. 1992)..............................................16

May Coating Tech., Inc., v. Illinois Tool Works, 157 F.R.D. 55 (D. Minn. 1994)......................16

Meyerhofer v. Empire Fire & Marine Ins. Co., 497 F.2d 1190 (2d Cir. 1974)...........................16

Monahu v. Continental Energy Corp., No. 83 C 9354, 1984 U.S. Dist. Lexis 24236 (N.D. Ill. Aug. 20, 1984) .......................................................................................................................17

Morin v. Trupin, 728 F. Supp. 952 (S.D.N.Y. 1989)...................................................................22

New Colt Holding Corp. v. RJG Holdings, No. 3:03 cv 173 (PCD), 2003 U.S. Dist. Lexis 18036 (D. Conn. Mar. 26, 2003) .....................................................................................................26

Niagara Mohawk Power Corp. v. Stone & Webber Eng'g Corp., 125 F.R.D. 578 (N.D.N.Y. 1989)......................................................................................................................................28

Nichols v. Vill. Voice, Inc., 99 Misc. 2d 822 (Sup. Ct. N.Y. County 1979)...............................20

Olszewski v. Bloomberg L.P., No. 96 Civ. 3393(RPP), 2000 WL 1843236 (S.D.N.Y. Dec. 13, 2000)......................................................................................................................................28

Sage Realty v. Proskauer Rose Goetz & Mendelsohn L.L.P., 91 N.Y.2d 30 (1997) ...................25

Savitt v. Vacco, Nos. 95-CV-1842, 95-CV 1853 (RSP/DRH), 1996 U.S. Dist. Lexis 16875 (N.D.N.Y. Nov. 8, 1995) ......................................................................................................17

SEC v. Morelli, 143 F.R.D. 42 (S.D.N.Y. 1992)....................................................................29, 32

SEC. v. Thestreet.com, 273 F.3d 222 (2d Cir. 2001)...................................................................13

Shelton v. American Motors Corp., 805 F.2d 1323 (8th Cir. 1986)......................................28, 29

Todd v. Merrell Dow Pharm. Inc., 942 F.2d 1173 (7th Cir. 1991)..............................................33

Turnbull v. Topeka State Hosp., 185 F.R.D. 645 (D. Kan. 1999) ...............................................16

United States v. Devery, No. 93 Cr. 273 (LAP), 1995 U.S. Dist. Lexis. 4799 (S.D.N.Y. April 12, 1995)................................................................................................................................18

United States v. District Council, No. 90 Civ. 5722 (CSH), 1992 WL 208284 (S.D.N.Y. Aug. 18, 1992)..........................................................................................................................31, 32

United States v. Jacobs, 117 F.3d 82 (2d Cir. 1997) ...........................................................37, 38

United States v. Ostrer, 422 F. Supp. 93 (S.D.N.Y. 1976)........................................................18

United States v. Richard Roe, Inc. (In re Richard Roe, Inc.), 68 F.3d 38 (2d Cir. 1995).............37

Von Bulow v. Von Bulow, 811 F.2d 136 (2d Cir. 1987)............................................................29

Zachair, Ltd. v. Driggs, 965 F. Supp. 741 (D. Md. 1997)..........................................................23

## Rules

District of Columbia Rule of Professional Conduct 1.16(d) ......................................................25

District of Columbia Rule of Professional Conduct 1.6(b) .......................................................20

District of Columbia Rule of Professional Conduct 1.6(d)(3)...................................................21

Fed. R. Civ. P. 26(b)(3)........................................................................................................31, 32

Fed. R. Civ. P. 26(c)...................................................................................................................16

Fed. R. Civ. P. 30(d)(2)..............................................................................................................26

New York Lawyer's Code of Professional Responsibility DR 2-110(A)(2) ..............................24

New York Lawyer's Code of Professional Responsibility DR 4-101(A)...................................21

New York Lawyer's Code of Professional Responsibility DR 4-101(B) ...................................21

New York Lawyer's Code of Professional Responsibility DR 4-101(C)(4)...............................22

New York Lawyer's Code of Professional Responsibility DR 9-102(C) ...................................24

## Treatises

8 Wigmore on Evidence, § 2302 (McNaughton rev. 1961) .......................................................18

9 Weinstein, Korn & Miller, New York Civil Practice § 4503.03 (2d ed. 2006).........................18

## **Other Authorities**

District of Columbia Rule of Professional Conduct 1.6 cmt. 23 ................................................21

Fed. R. Civ. P. 26(b)(3) advisory committee's note (1970 amendment) ....................................33

New York State Bar Association Committee on Professional Ethics, Opinion 766 (Sept. 10, 2003).................................................................................................................................25

## PRELIMINARY STATEMENT

Plaintiffs NXIVM Corporation ("NXIVM," formerly known as Executive Success Programs, Inc.), Alex Betancout, Barbara Bouchey, Clare W. Bronfman, Edgar Boone, Ellen Gibson, Sara R. Bronfman, Pamela Cafritz, Suzanne Kemp, Wayne Bates, Luis Montes, and Franca DiCrensenzo submit this memorandum of law in support of their motion for a protective order: (i) prohibiting Defendant Joseph J. O'Hara, Esq. ("O'Hara") from disclosing Plaintiffs' attorney-client privileged and work product information, and other confidences and information, to third parties, including to Plaintiffs' adversaries in other litigations and to the press; (ii) requiring O'Hara to return to the Plaintiffs all files in his possession related to his representation of them; (iii) compelling O'Hara to produce copies of all communications between O'Hara and any third parties (other than his counsel) concerning NXIVM, its principals or any of the Plaintiffs; (iv) extending the length of O'Hara's deposition so as to allow for discovery of the extent of O'Hara's ethical breaches; and (v) quashing subpoenas issued by counsel to Rick Ross seeking testimony and documents from O'Hara concerning his work for the Plaintiffs in connection with NXIVM Corporation v. Sutton, 06 CV 01051 (DMC/MF), currently pending in the District of New Jersey.

This motion presents an extraordinary set of facts. O'Hara is an attorney who has been sued in this case by his former clients, NXIVM and certain of the other Plaintiffs. O'Hara has threatened to make his former clients regret their decision to sue him. O'Hara has unfortunately decided to "strike back" by disclosing his former clients' attorney-client privileged and work product information and other information that he learned in confidence as an attorney (the "Protected Information"). O'Hara has evidently disclosed the Protected Information to members of the press and to his former clients' adversaries in one of the very litigations with which O'Hara was hired to assist. It appears that O'Hara has defied his own counsel's instructions to

him not to do so and that he may have also violated an order of this Court in doing so, the Initial Stipulation and Order of Confidentiality entered in this action.

Besides violating an Order of this Court, O'Hara's conduct violates the ethical rules of both the District of Columbia, where O'Hara is licensed to practice law, and New York State, where O'Hara is not licensed but has nonetheless practiced law. Nor does the fact that the Plaintiffs have sued O'Hara in any way excuse his unprecedented, public disclosures of the Plaintiffs' Protected Information to their adversaries and to the press. Under the ethical rules and the prevailing law, O'Hara is only permitted to make disclosures that are "reasonably necessary" to his defense of this action and, even then, he is required to seek appropriate protection so that even those disclosures are not revealed publicly. Furthermore, under those same rules and the law, O'Hara has been obligated to return the Plaintiffs' files to them since the termination of his representation of them, over a year ago, a request that he has ignored repeatedly.

O'Hara's disclosures have also managed to prejudice his former clients in an action that he once assisted them with. Based on the Protected Information, coupled with some additional falsehoods and speculation that O'Hara is disseminating, Rick Ross, one of the defendants in that action, is attempting to assert claims against NXIVM relating to an investigation into Ross that O'Hara oversaw in connection with that litigation. Ross has sought discovery both from NXIVM and from O'Hara concerning O'Hara's work for the Plaintiffs and has served a third-party subpoena on O'Hara seeking discovery concerning his work for the Plaintiffs.

The Plaintiffs request that this Court invoke its power to stop O'Hara from continuing to disclose Plaintiffs' Protected Information. In addition, the Plaintiffs seek an order requiring O'Hara to return to the Plaintiffs all copies of any files in his possession relating to his work for the Plaintiffs, so that he is not in a position to continue to reveal such information again (while

allowing O'Hara's counsel to maintain a copy for their use in defending this action). The Plaintiffs' repeated and long-outstanding demands that O'Hara return those files have not been answered. The Plaintiffs also request additional time to depose O'Hara in order to determine the extent of the disclosures of the Plaintiffs' Protected Information to third parties and adversaries, and an order requiring O'Hara to produce copies of all of his written communications with third parties (other than his attorneys) concerning NXIVM, its principals or any of the other Plaintiffs. O'Hara refuses to comply with that document demand, which seems to be the principal sticking point in counsel's efforts to resolve this situation consensually. O'Hara's hollow arguments for why this demand is "unduly burdensome" suggest that his real goal is to avoid disclosing the extent to which he has violated his ethical obligations as an attorney and violated an order of this Court.

Finally, the Plaintiffs also seek an order quashing the third party subpoena issued to O'Hara in this District by counsel for Rick Ross, a defendant in an action pending in the District of New Jersey. That subpoena seeks the discovery of Protected Information possessed by O'Hara, and is the direct result of O'Hara's unprecedented campaign to injure his former clients by disclosing confidences that he learned while he was their attorney, coupling those disclosures with fantastic tales of criminal wrongdoing that O'Hara made up. The sideshow that has resulted – apparently the very injury that O'Hara intended to inflict on NXIVM for having the temerity to sue him – does not justify the extraordinary intrusion by NXIVM's adversary Ross into how NXIVM litigated its case against him, or what NXIVM and its attorney O'Hara discussed in connection with that litigation.

## **STATEMENT OF FACTS**

The facts of this matter are stated in the accompanying Declaration of Nancy Salzman, dated October 19, 2006 (the "Salzman Dec.") and the Declaration of Douglas C. Rennie, dated

October 20, 2006 (the "Rennie Dec."), which incorporates several declarations previously filed

in this case, including Exhibit R, the Declaration of Kristin Keeffe, dated August 7, 2006 (the

"Keeffe Dec."), which was submitted in connection with a motion in the matter <u>NXIVM</u>

<u>Corporation v. Sutton, Ross, et al.</u>, pending in the United States District Court for the District of

New Jersey.  Those facts are summarized here.

**A.**      **O'HARA'S ATTORNEY-CLIENT RELATIONSHIP WITH THE PLAINTIFFS**

NXIVM's principal business is conducting training programs primarily for managers,

chief executives, and other business professionals.  Although NXIVM conducts these programs

throughout the United States and internationally, a substantial portion of those programs are held

in the State of New York.

In August 2003, NXIVM Corporation and non-party First Principles, Inc. commenced an

action in this Court against, among others, Rick Ross and The Ross Institute, seeking to protect

their intellectual property rights and their business reputation.  That action was subsequently

consolidated with a related action and transferred to the District of New Jersey, where it is

currently pending and is referenced as <u>NXIVM Corporation v. Sutton,</u> 06 CV 01051 (DMC/MF)

(the "Ross Action").  (Rennie Dec. ¶ 14).

Rick Ross is a convicted felon with a high school education who markets himself as a

"cult expert" and "intervention specialist," and who makes a living by "exposing" organizations

that he deems to be "cults" (thereby creating demand for his "intervention" services).  Ross's

website applies the "cult" label to NXIVM, as well as to organizations as diverse as Amway

Corporation, the Mormon Church, the Freemasons, Jews for Jesus, Opus Dei, the Jerry Falwell

Ministries and the Christian Broadcasting Network (i.e., the "700 Club").  <u>See</u>

http://www.rickross.com (last accessed October 20, 2006).

In the Ross Action, NXIVM alleges that Ross (and the other defendants) disparaged NXIVM and infringed its intellectual property rights by stealing their trade secret and copyrighted materials and posting excerpts from (and mischaracterizations of) those materials on the Internet.

In the Fall of 2003, prior to retaining their current counsel, the Plaintiffs retained Defendant Joseph J. O'Hara, Esq., as their attorney for assistance with various matters, including the Ross Action. (Rennie Dec. ¶ 19(b), Exh. R; Salzman Dec. ¶¶ 3-6). NXIVM needed help on legal matters. (Salzman Dec. ¶ 3). O'Hara told Nancy Salzman, NXIVM's President, that he was a lawyer and that he would provide legal services and advice generally. (Id.; see also Rennie Dec. ¶ 28(a), Exh. AD). In December 2003, NXIVM gave O'Hara a $25,000 check marked "Dec '03 Retainer – Legal Services." (Salzman Dec. ¶ 8, Exh. A). O'Hara's invoices were paid with checks marked "Legal/Professional Services." (Id).

O'Hara provided the Plaintiffs with numerous types of legal services. These included, but were not limited to: (1) advising, creating, and implementing the structure of NXIVM's corporate form; (2) tax planning and advice; (3) heading legal strategy meetings for all of NXIVM's legal matters; (4) writing and/or editing legal briefs and filings in conjunction with other attorneys retained by NXIVM; and (5) advising NXIVM employees on real estate, as well as on immigration and matrimonial issues. (Rennie Dec. ¶ 19(b), Exh. R; Salzman Dec. ¶¶ 3-6). He wrote memoranda and letters to NXIVM on the letterhead of his firm "The O'Hara Group & Associates, PLLC, Attorneys and Counselors at Law." (See, e.g., Salzman Dec. Exhs. B & E). The memoranda and correspondence are headed "Confidential Legal Document" or "Confidential And Legal Product." (Id). O'Hara submitted an on-line application to a company

5

called Choicepoint in which he identified himself as an "Attorney/Lobbyist."  (Salzman Dec. ¶ 10, Exh. C).

Numerous individuals working with and on behalf of NXIVM also understood that O'Hara was acting as NXIVM's attorney, because O'Hara told them he was NXIVM's attorney, including one of NXIVM's other attorneys (John Casey).  (Rennie Dec. ¶ 28(d), Exh. AG; see also Rennie Dec. ¶ 28, Exhs. AE, AH, AI, & AJ).  NXIVM's accountant also understood that O'Hara was NXIVM's attorney.  (Rennie Dec. ¶ 28(c), Exh. AF).

Indeed, even O'Hara understood that he was NXIVM's attorney.  In March 2005, O'Hara wrote to NXIVM on the letter head of "The O'Hara Group & Associates, PLLC, Attorneys and Counselors at Law."  (Salzman Dec. ¶ 9, Exh. B).  The document is headed "Confidential Legal Document."  (Id).  In the document, O'Hara writes:

> I believe that all of [The O'Hara Group & Associates] work to date is entitled to all of the protections that are associated with 'Attorney/Client Privilege'.  In this regard, however, please be advised that this privilege only applies to work that was undertaken – and/or related discussions that occurred – during the period from July 1, 2004 through this date.

(Id). (emphasis in original).[1]

---

[1]     Although O'Hara attempted in his letter to confine the period in which he was acting as an attorney to the period July 2004 and after, he identified himself before that date as NXIVM's attorney.  (See Salzman Dec. ¶¶ 3-6; Exh. C).  NXIVM's February, March and May 2004 checks to O'Hara state that they are in payment of "Legal/Professional Services."  The December 2003 check from NXIVM states that it is for payment of a "Retainer – Legal Services."  (Salzman Dec. ¶ 8, Exh. A).  In addition, O'Hara has pointed to an unexecuted "Professional Services Agreement" dated October 2003 that O'Hara drafted, which states that he "will not provide any direct legal services" to NXIVM.  (Salzman Dec. ¶ 13, Exh. F at ¶ 1(d) on p. 3 of 7).  Aside from the fact that this agreement was never executed, it plainly provides for the provision of legal services.  In any event, quibbling over whether an attorney who provides "technical assistance and/or consultative services" on matters such as "the legal status" of NXIVM (see id. at ¶ 1(a) on p. 1 of 7) is providing legal services is ultimately beside the point.  O'Hara himself acknowledged that his status later changed.  (Salzman Dec. ¶ 9, Exh. B).

In the Fall of 2004, acting on the suggestion of the Plaintiffs' then-counsel of record in the Ross Action, Nolan & Heller, O'Hara retained Interfor, Inc. ("Interfor"), a private investigation firm, on behalf of the Plaintiffs in order to assist them in gathering information, including in connection with the Ross Action. (Rennie Dec. ¶ 19(b), Exh. R). The retainer agreement was signed by Interfor and by O'Hara, on the letterhead of "The O'Hara Group & Associates, PLLC, Attorneys and Counselors at Law." (Id). Interfor endeavored to gather such information as requested and directed by O'Hara and by NXIVM, generating various documents and reports in connection with its efforts. One of the subjects of Interfor's investigative efforts was Ross, and in connection with that work, Interfor generated a report on Ross (the "Interfor Report"). (Id).

**B.      THE PLAINTIFFS COMMENCE AN ACTION AGAINST O'HARA**

In the Spring of 2005, O'Hara notified the Plaintiffs that he was terminating his representation of them. The Plaintiffs subsequently learned that O'Hara was not licensed to practice law in New York State, where his primary office and residence were (and currently are) located. The Plaintiffs also subsequently learned of various other alleged acts of wrongdoing by O'Hara. Based on these revelations, in August 2005, the Plaintiffs sued O'Hara. (Id).[2]

In the Complaint in this action, the Plaintiffs allege that O'Hara committed legal malpractice, fraudulently obtained loans from two of the Plaintiffs, and conspired to steal funds from the Plaintiffs through a not-for-profit foundation. The claims asserted against O'Hara include racketeering, fraud, breach of fiduciary duty, malpractice, breach of contract, and unjust enrichment.

---

[2]      As the Court is aware, that initial action was voluntarily dismissed and then subsequently re-filed.

In February 2006, O'Hara served his Rule 26 disclosures on the Plaintiffs, including a copy of the Interfor Report.  In the accompanying cover letter, O'Hara's counsel, correctly anticipating that the Plaintiffs would claim that the documents were protected by the attorney-client privilege and work product doctrine, noted that the documents would not be provided to counsel for former Defendant Rutnik if the Plaintiffs objected.  (Rennie Dec. ¶ 3, Exh. A).  The Plaintiffs timely objected, and, on March 27, 2006, this Court issued an Order prohibiting O'Hara from disclosing that information to third parties.  (Rennie Dec. ¶¶ 3, 5).  The Court then held a telephone conference on the subject during which the Court urged the parties to resolve the issue through a stipulation.  The Parties were eventually able to reach such an agreement.  (Rennie Dec. ¶¶ 6-12, Exhs. H & I).

In addition, the Plaintiffs made a demand for the return of their files in O'Hara's possession, pursuant to O'Hara's ethical and legal obligations.  When O'Hara's counsel did not respond, the Plaintiffs repeated this demand.  To this date, O'Hara has yet to comply with this demand, although he very recently produced a copy of his files related to Interfor.  (Rennie Dec. ¶ 13, Exhs. J & K).

## C.    O'HARA'S CAMPAIGN TO DISCLOSE THE PROTECTED INFORMATION

Both before and since the commencement of the lawsuit against him, O'Hara has stated that he would make NXIVM regret it if NXIVM was to press its claims against him.  (Rennie Dec. ¶ 19(b), Exh. R).  It appears that O'Hara has decided to carry out those threats by embarking on a campaign to reveal the Plaintiffs' Protected Information (and slander the Plaintiffs in the process) to the press and to NXIVM's adversaries in breach of his ethical and fiduciary obligations.  A chronological review of the evidence of O'Hara's conduct in this regard establishes that O'Hara has been making these prohibited disclosures.

NXIVM recently learned from discovery in the Ross Action that, in December of 2005, O'Hara contacted Morris Sutton, a defendant in the Ross Action, seeking assistance in funding O'Hara's defense of this action.  (Rennie Dec. ¶ 15, Exh. M).  The Plaintiffs do not at present know what, if any, disclosures O'Hara made in connection with that solicitation.

On Wednesday, July 12, 2006, counsel for the plaintiffs in the Ross Action received notice that counsel to Ross had subpoenaed Interfor and two of its representatives for documents and deposition testimony (the "Interfor Subpoenas").  (Rennie Dec. ¶ 16, Exh. N).  As NXIVM did not disclose Interfor's identity to Ross, the probable source of Ross's desire to take discovery from Interfor, whether directly or indirectly, was O'Hara.  (Rennie Dec. ¶ 19(b), Exh. R).  Accordingly, on July 19, counsel for the Plaintiffs wrote to counsel for Ross, requesting that they withdraw the Interfor Subpoenas, reminding them of their ethical obligations to identify all attorney-client privileged and work product information provided to them by O'Hara, and requesting that they return all copies of any documents provided to them by O'Hara and identify all remedial procedures that they intended to undertake, or had already undertaken, to ensure that such information would not be used either by them or by their clients in the Ross Action. (Rennie Dec. ¶ 17, Exh. O).

Counsel for Ross responded by refusing to withdraw the Interfor Subpoenas and declining to provide further clarity as to what information or documents O'Hara had provided them.  (Rennie Dec. ¶ 18, Exh. P).  Further, Ross's counsel denied that O'Hara was acting as NXIVM's attorney in retaining Interfor, accused NXIVM, Interfor and some unspecified attorney of some unspecified criminal misconduct, and claimed that any applicable privileges

9

were thereby waived in any event.  (Id).  Tellingly, counsel for Ross did not deny that they had received the information on which they based their accusations from O'Hara.[3]

At the same time that O'Hara was contacting the defendants and/or their attorneys in the Ross Action, he was apparently also disclosing the Plaintiffs' Protected Information to the press. On July 24, 2006, an article appeared in Forbes magazine stating as follows:

> FORBES has also obtained documentation of a $2 million loan Clare [Bronfman] made to NXIVM.  According to a former consultant to NXIVM who was given a copy of the company's internal records concerning the arrangement with Clare, the $2 million loan will be entirely paid off through personal training sessions that are to be personally delivered by Nancy Salzman via credits earned by Salzman in exchange for being available to take calls from Clare.

(Rennie Dec. ¶ 26(a), Exh. U) (emphasis added).

On August 6, 2006, the Albany Times-Union published a story that included quotes from O'Hara and contained the following statements:

> Others are working collaboratively against Nxivm.  Ross and [Toni] Natalie have joined forces with ex-Nxivm consultant Joseph O'Hara of Albany.

(Rennie Dec. ¶ 26(b), Exh. V) (emphasis added).

On August 10, 2006, an article appeared in Metroland newsweekly, also discussing NXIVM, Ross, and Interfor.  It contained a discussion of Ross's interaction with another reporter, stating:

> Ross is on the phone with a reporter, attempting to confirm information in a document that he claims he has never seen. The reporter is holding a copy of the nine-page report, including a cover page and a page that warns of the document's strict confidentiality. It appears to have been prepared on Nov. 23, 2004, for the O'Hara Group & Associates LLC, an Albany-based consulting firm that allegedly was working for NXIVM at the time. The report appears to be the work of a New

---

[3]     On August 7, 2006, NXIVM filed a Motion to Quash the Interfor Subpoenas and for a Protective Order requiring the return and disclosure of all information the defendants in the Ross Action received from O'Hara.  (Rennie Dec. ¶ 19(a), Exh. Q).  That motion, which has not yet been fully briefed, is pending in the District Court in New Jersey.

York-based industrial-espionage firm Interfor Inc. (The document was given to Metroland by <u>a former NXIVM insider</u>.)

(Rennie Dec. ¶ 26(c), Exh. W) (emphasis added).

On August 15, 2006, Ross responded to NXIVM's discovery requests in the Ross Action, including an interrogatory response in which he stated as follows:

> Joseph O'Hara has contacted me by e-mail and telephone in the past regarding NXIVM, although prior to the evening of July 12, 2006 I had not responded to him nor spoken with him; I spoke with O'Hara for the first time on the evening of Wednesday, July 12, 2006, when he called me by telephone.

(Rennie Dec. ¶ 20).

If there were any doubt that O'Hara was flagrantly breaching his fiduciary duties to the Plaintiffs, it was eviscerated on August 24, 2006, when counsel for Ross served counsel for NXIVM with a proposed Verified Counterclaim and Third Party Complaint seeking relief against various individuals affiliated with NXIVM and Interfor related to the events of the Interfor investigation of Ross.  (Rennie Dec. ¶ 21).  That document asserts the following, among other things:

- "After the Fourth of July holiday, Ross had an opportunity to speak by phone with the reporter, Chet Hardin.  Hardin was working on a story that involved NXIVM hiring Interfor to investigate Ross and lure him onto a cruise ship.  According to Hardin, the source of his story was former NXIVM associate Joseph O'Hara."  (<u>Id</u>).

- "During Ross's discussion with Hardin, the reporter read to Ross from a report that had been written by Interfor…."  (<u>Id</u>).

- "Thereafter, on the evening of July 12, 2006, Ross received an unsolicited phone call from Joseph O'Hara.  During the phone call, and another phone call O'Hara made to Ross the following week . . . ."  (<u>Id</u>).

11

- "After O'Hara's conversation with Ross, he faxed Ross a report created by Interfor – apparently the same report described by Chet Hardin on the telephone and in Metroland's August 10, 2006 article.  The report, ostensibly the same document that NXIVM's privilege log identified in the O'Hara case…."  (Id).

In early September, Metroland then published a "Letter to the Editor" from O'Hara who wrote "to commend Metroland—and especially reporter Chet Hardin" on their August 10 article concerning NXIVM.  O'Hara further used the opportunity to accuse NXIVM (falsely) of tax fraud.  (Rennie Dec. ¶ 26(e), Exh. Y).

On October 6, 2006, counsel for Ross filed a motion seeking to amend Ross's pleading to add the Verified Counterclaim and Third Party Complaint.  (Rennie Dec. ¶ 23).  In support of that motion, Ross detailed various contacts he had with O'Hara since July 12, 2006, and declared under penalty of perjury that O'Hara faxed the Interfor Report to him at some unspecified time after July 12, 2006.  (Rennie Dec. ¶ 24).

On October 10, 2006, this Court granted Ross permission to intervene for the limited purpose of being heard on whether the Plaintiffs' application for a protective order would impact motions pending in the Ross Action before the District of New Jersey.

## D.    THE COURT ORDERS REGARDING THE DISCLOSURE OF CONFIDENTIAL INFORMATION

The Interfor Report, which O'Hara provided to Ross and which was discussed in the Metroland article, as well as the loan documents discussed in the Forbes article, were all produced in this action as part of O'Hara's Rule 26 disclosures.  When O'Hara made those disclosures, the Plaintiffs asserted that the materials were protected by the attorney-client privilege, work product doctrine, and/or an attorney's ethical obligations to preserve confidences and secrets.  On March 27, 2006, this Court issued an Order prohibiting O'Hara from disclosing

that information until the Court resolved the issue, to the extent necessary (hereinafter, "March 27 Order").

At the urging of this Court, the parties avoided formal motion practice on the subject by entering into the Initial Stipulation and Order of Confidentiality (hereinafter, the "Confidentiality Order"), providing for the preservation of the attorney-client privilege and work product protection, and for the continuing confidentiality and secrecy of those documents, consistent with O'Hara's ethical obligations to his former clients.  The Confidentiality Order elaborates on the Court's March 27 Order by limiting disclosure of information designated as "Confidential – Attorney Client Privilege" to O'Hara and the Plaintiffs, their counsel and support staff, and to the Court as necessary to rule on questions of privilege.  (Rennie Dec. ¶¶ 11-12, Exhs. H & I).[4]  The Confidentiality Order explicitly provides that:

> The parties agree that the materials appearing as exhibits G through U to Defendant O'Hara's Rule 26(a) disclosures will be treated as "Confidential – Attorney Client Privilege" without prejudice to Defendant O'Hara's position that the materials are not privileged.  Should Defendant O'Hara deem it necessary to disclose these materials to someone other than as provided in paragraph 7, Defendant O'Hara will provide the Plaintiffs with reasonable notice (i.e., no less than fifteen (15) business days) of his intent to do so and continue to treat the materials as "Confidential – Attorney Client Privilege" until such time as the Court has ruled on the issue or the Plaintiffs agree to the disclosure.

(Id).  The Interfor Report is Exhibit S to O'Hara's Rule 26 disclosures, and the loan documents are Exhibits H and I.  (Rennie Dec. ¶ 6, Exh. C).

---

[4]     The Plaintiffs believe that the Confidentiality Order is the equivalent of a modification of the March 27 Order, which is well within the Court's discretion given that the modification in this instance would not impact any reliance the Parties may have had on the March 27 Order.  See, e.g., SEC. v. Thestreet.com, 273 F.3d 222, 230-31 (2d Cir. 2001) (noting that modifications to protective orders are disfavored where they may unfairly disturb the legitimate expectations of the litigants, but are discretionary where the order modified is temporary or limited).  In any event, whichever Order applied as the date that O'Hara faxed the Interfor Report to Ross – either the March 27 Order or the Confidentiality Order – O'Hara plainly violated it.

The agreement does not apply to material prior to the time that it is designated as "Confidential – Attorney Client Privilege," however, it also does not ratify any disclosures of such material prior to the time that it is designated as such.  (Rennie Dec. ¶¶ 11-12, Exhs. H & I). This wording was negotiated by O'Hara's counsel, who informed Plaintiffs' counsel that they had instructed O'Hara not to provide the materials to anyone else, but were uncertain as to whether he had done so prior to providing the materials to his counsel.  (Rennie Dec. ¶¶ 8-12, Exhs. D - I).

The Confidentiality Order was agreed to between counsel in April 2006, when the Stipulation and Order was signed by counsel for O'Hara and Polit, subject to the Plaintiffs' finalization of their settlement with former Defendant Douglas Rutnik.  (Id).  The Stipulation of Dismissal as to Defendant Rutnik was executed by the Court on July 18, 2006, and the Confidentiality Stipulation was submitted to this Court to be "So Ordered" on July 19, 2006. (Id).

## E.   O'HARA REFUSES TO PROVIDE EVIDENCE OF HIS COMMUNICATIONS WITH THIRD PARTIES CONCERNING NXIVM

Prior to filing this motion, counsel for the Plaintiffs conferred with O'Hara's counsel in order to see if O'Hara would agree to the relief the Plaintiffs are seeking.  The Parties had nearly resolved the issues, and O'Hara had essentially agreed to much of the relief sought by this motion.  However, counsel for O'Hara flatly refused to produce the documents concerning O'Hara's contacts with third parties concerning NXIVM in advance of O'Hara's deposition. These documents are responsive to NXIVM's document request 5(b), served on August 18, 2006.  (Rennie Dec. ¶ 27, Exhs. Z - AC).  O'Hara took the position that NXIVM should question him concerning his contacts and, only if O'Hara admits to a particular contact, to then seek the documents relating to that contact.  NXIVM is unwilling to agree to such a procedure, as it

would put the Plaintiffs at the mercy of O'Hara's memory and/or willingness to testify truthfully

concerning his contacts.  As of this date, O'Hara has still not responded to the Plaintiffs'

document request, or provided the responsive documents.

## ARGUMENT

**POINT I.    THIS COURT SHOULD ENTER AN ORDER REQUIRING DEFENDANT O'HARA TO COMPLY WITH HIS ETHICAL OBLIGATIONS AND PROHIBIT HIM FROM DISCLOSING PRIVILEGED AND CONFIDENTIAL INFORMATION**

Since being sued by the Plaintiffs for, among other things, legal malpractice, O'Hara has

sought to exacerbate the Plaintiffs' damages by setting out on a campaign to reveal the Plaintiffs'

Protected Information and falsely accuse the Plaintiffs of having committed various crimes.  As

explained below, O'Hara's behavior is ethically and legally improper and, if the declaration of

Rick Ross is to be believed, violated an Order of this Court.

The Plaintiffs consequently seek an order under Federal Rule of Civil Procedure 26(c)

and this Court's inherent power to regulate the conduct of the parties appearing before it in

matters concerning the litigation, that would (i) unequivocally prevent O'Hara from further

disseminating Protected Information, (ii) require him to return to the Plaintiffs all of his files

concerning his representation of them, (iii) produce immediately all evidence of his

communications with third parties (other than his counsel) concerning NXIVM and (iv) extend

the length of O'Hara's deposition so that they may discover the extent of O'Hara's ethical

breaches, without compromising their ability to take discovery on the merits of this case.

A.    **The Court Should Grant A Protective Order Prohibiting O'Hara From Further Disclosures Of The Plaintiffs' Protected Information To Third Parties And Requiring Him To Return All Files To The Plaintiffs**

O'Hara's breach of the applicable bar rules, as well as the protected nature of the information at issue, warrant the issuance of a protective order to prevent O'Hara from further disclosing Protected Information.

Federal Rule of Civil Procedure 26(c) provides that the Court "may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense …." The Rule "confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required." See May Coating Tech., Inc., v. Illinois Tool Works, 157 F.R.D. 55, 56-57 (D. Minn. 1994). Courts have granted such orders in a wide variety of analogous circumstances. See, e.g., M & M Med. Supplies & Serv. Inc., v. Pleasant Valley Hosp. Inc., 981 F.2d 160, 163 (4th Cir. 1992) (determining that the district court did not err in entering protective order prohibiting the plaintiff from contacting former patients of the defendant hospital); Marrocco v. General Motors Corp., 966 F.2d 220, 221, 225 (7th Cir. 1992) (affirming lower court's grant of sanctions against a party that violated protective order requiring the parties to preserve the condition of a motor vehicle that was the subject of a products liability action); May Coating Tech., Inc., 157 F.R.D. at 56-57 (issuing a protective order preventing plaintiff from contacting defendant's customers).

In addition, federal courts also have the inherent power to issue protective orders directing the conduct of the parties or their counsel. Turnbull v. Topeka State Hosp., 185 F.R.D. 645, 651 (D. Kan. 1999); see also Meyerhofer v. Empire Fire & Marine Ins. Co., 497 F.2d 1190, 1196 (2d Cir. 1974) (affirming an order prohibiting defendants' former counsel, who had also been a named defendant, from disclosing information outside of the discovery process); Monahu

v. Continental Energy Corp., No. 83 C 9354, 1984 U.S. Dist. Lexis 24236, at *4 (N.D. Ill. Aug. 20, 1984) (recognizing the courts' inherent power to regulate litigation).

"[A] party seeking a protective order pursuant to Rule 26(c) has the burden of showing that good cause exists for the issuance of that order." Savitt v. Vacco, Nos. 95-CV-1842, 95-CV 1853 (RSP/DRH), 1996 U.S. Dist. Lexis 16875, at *14-16 (N.D.N.Y. Nov. 8, 1995) (quoting In re Agent Orange Prod. Liab. Litig., 821 F.2d 139, 145 (2d Cir. 1987)).  "Good cause must be established by particular and specific facts rather than conclusory assertions." Hasbrouck v. BankAmerica Hous. Servs., 187 F.R.D. 453, 455 (N.D.N.Y. 1999).  "[I]f the movant establishes good cause for protection, the court may balance the countervailing interests to determine whether to exercise discretion and grant the order." Id.

The Plaintiffs have shown good cause through specific facts that a protective order is necessary.  O'Hara has breached his ethical obligations (as explained below) and an Order of the Court in this action by disclosing Protected Information to the defendants in the Ross Action, to members of the press and possibly to other third parties.  O'Hara is the only likely source with knowledge of the Plaintiffs' Protected Information who is available to the defendants in the Ross Action and to the press and, of course, Ross has now confirmed that his source was O'Hara himself.[5]

---

[5]    The Confidentiality Order already in effect applies only to materials exchanged in the discovery process that counsel have designated as "Confidential – Attorney Client Privilege." Due to the nature of O'Hara's disclosures outside of the discovery process, and the possibility that O'Hara may object or otherwise keep materials from being subject to discovery, the Plaintiffs are forced here to seek a broader order restricting O'Hara's use of the Plaintiffs' Protected Information, even if it has not yet been made a part of discovery in this action.

**B.    O'Hara's Conduct Constituted The Practice Of Law And Consequently, He Owed Ethical Duties To The Plaintiffs**

An attorney-client relationship was formed in this case even though O'Hara was not licensed to practice law in New York State.  In determining whether or not an attorney-client relationship was formed, and therefore whether the obligations of confidentiality and the protections of the attorney-client privilege attached, the relevant fact is the Plaintiffs' belief that O'Hara was acting as their attorney, and that their communications with O'Hara were subject to the attorney-client privilege.  "The key, of course, to whether an attorney/client relationship existed is the intent of the client and whether he reasonably understood the conference to be confidential."  United States v. Devery, No. 93 Cr. 273 (LAP), 1995 U.S. Dist. Lexis. 4799, at *14-15 (S.D.N.Y. April 12, 1995) (emphasis added).  "The testimonial privilege against disclosure of attorney-client communications is applicable where the client entertains good faith beliefs (even if erroneous) that the person consulted is a lawyer, and is acting as such on his behalf."  United States v. Ostrer, 422 F. Supp. 93, 97 (S.D.N.Y. 1976) (emphasis added); see also 9 Weinstein, Korn & Miller, New York Civil Practice § 4503.03 (2d ed. 2006)  ("If the client has a bona fide belief that his consultant is in fact an attorney, it would seem that there is good reason to treat him in the same way as an attorney authorized to practice in another jurisdiction."); 8 Wigmore on Evidence, § 2302 (McNaughton rev. 1961) ("The theory of the privilege clearly requires that the client's bona fide belief in the status of his adviser as an admitted attorney should entitle him to the privilege.").

In this case, there can be no doubt that the Plaintiffs had a reasonable good faith belief that O'Hara was their attorney and was acting as such on their behalf.  O'Hara himself stated as much.  (Salzman Dec. ¶¶ 3-6, Exh. B; Rennie Dec. ¶ 19(b), Exh. R).  O'Hara used the letterhead of "The O'Hara Group & Associates, PLLC, Attorneys and Counselors At Law."  (See, e.g.,

Salzman Dec. Exhs. B & E).  His work product was marked with a legend "Confidential And Legal Product."  (<u>Id</u>).  NXIVM paid his invoices with checks that state they are in payment of "Legal/Professional Services" and "Retainer-Legal Services."  (Salzman Dec. ¶ 8, Exh. A). NXIVM's president, Nancy Salzman, states that O'Hara held himself out as an attorney, and NXIVM relied upon that fact when it hired O'Hara to act as its attorney.  (Salzman Dec. ¶¶ 3-6). O'Hara also held himself out as NXIVM's attorney to third parties, including another NXIVM outside counsel, John Casey, and to Clare and Sara Bronfman, plaintiffs in this action.  (Rennie Dec. ¶ 28, Exhs. AE – AJ).

Now that O'Hara's conduct has been made an issue in this litigation, he has attempted to deny that he acted as NXIVM's counsel.  Of course, if O'Hara was acting as an attorney, his conduct was criminal.  <u>See</u> N.Y. Judiciary Law § 485 (making the unauthorized practice of law in New York a misdemeanor).  Thus, he has every incentive to deny, for example, his own written statements to NXIVM that he functioned as its attorney, or the fact that he wrote memoranda and letters on the letterhead of his firm "The O'Hara Group & Associates, PLLC, Attorneys and Counselors at Law," or that the documents that he wrote are headed "Confidential Legal Document."

O'Hara's denial lacks any credibility at all.  But the lack of credibility in O'Hara's denials is not determinative of the issue before this Court.  Because NXIVM reasonably believed that O'Hara was acting as its attorney, and that their communications were subject to the attorney-client privilege and the obligation of confidentiality, an attorney-client relationship must be found to have existed between O'Hara and NXIVM.  "It is clear that where an attorney receives confidential information from a person who, under the circumstances, has a right to believe that the attorney, as an attorney, will respect such confidences, the law will enforce the

obligation of confidence irrespective of the absence of a formal attorney-client relationship." Nichols v. Vill. Voice, Inc., 99 Misc. 2d 822, 824 (Sup. Ct. N.Y. County 1979).

**C.     O'Hara's Disclosure Of Client Confidences And Secrets Violated The Disciplinary Rules And Establishes Good Cause For The Entry Of A Protective Order**

Through his disclosures of information to Ross and to the press, O'Hara has violated both the District of Columbia Rules of Professional Conduct and the New York Lawyer's Code of Professional Responsibility.  As an attorney licensed to practice in the District of Columbia, O'Hara must abide by the District of Columbia Rules of Professional Conduct ("D.C. Bar Rules"), which are patterned after the Model Rules of Professional Conduct.  Also, because O'Hara held himself out as an attorney licensed to practice in the State of New York, he must also abide by the New York Lawyer's Code of Professional Responsibility.  See generally Kelly v. Hunton & Williams, No. 97-CV-5631 (JG), 1999 U.S. Dist. Lexis 9139, at *23-25 (E.D.N.Y. June 17, 1999) (determining that an associate at a New York law firm who was not admitted to practice law was subject to the New York disciplinary rules).  In either case, O'Hara's conducted violated the relevant rules.

D.C. Bar Rule 1.6 prohibits an attorney from knowingly revealing a confidence or secret of a client, or knowingly using a confidence or secret of a client to the disadvantage of the client or to the advantage of the lawyer or a third person.  Secrets encompass information other than that strictly protected by the attorney-client privilege, including "other information gained in the professional relationship that the client has requested be held inviolate, or the disclosure of which would be embarrassing, or would be likely to be detrimental, to the client."  D.C. Bar Rule 1.6(b)

Although the Plaintiffs have sued O'Hara, he is not permitted to shirk the ethical and fiduciary obligation of confidentiality.  The D.C. Bar Rules permit an attorney to:

> use or reveal client confidences or secrets: . . . [t]o the extent <u>reasonably</u>
> <u>necessary</u> to establish a defense to a criminal charge, disciplinary charge, or civil
> claim, formally instituted against the lawyer, based upon conduct in which the
> client was involved, or to the extent reasonably necessary to respond to specific
> allegations by the client concerning the lawyer's representation of the client . . . .

<u>Id</u>. at 1.6(d)(3) (emphasis added).

The extent of the lawyer's ability to reveal client information "reasonably necessary" to

the defense of a lawsuit is severely circumscribed, however.  Comment 23 to Rule 1.6 explains

that:

> disclosure should be no greater than the lawyer reasonably believes is necessary
> to vindicate innocence, the disclosure should be made in a manner that limits
> access to the information to the tribunal or other persons having a need to know it,
> and appropriate protective orders or other arrangements should be sought by the
> lawyer to the fullest extent practicable.

<u>Id.</u> at 1.6 cmt. 23 (emphasis added).

In addition to his violation of the D.C. Bar Rules, O'Hara has also violated the New York

Lawyer's Code of Professional Responsibility ("N.Y. Bar Rules") through his disclosure of

Protected Information.  The N.Y. Bar Rules prohibit the disclosure of client confidences or

secrets.  The N.Y. Bar Rules define a confidence as "information protected by the attorney-client

privilege under applicable law" and define a secret as "other information gained in the

professional relationship that the client has requested be held inviolate or the disclosure of which

would be embarrassing or would be likely to be detrimental to the client."  DR 4-101(A).  The

information about the work that Interfor conducted for NXIVM and various other types of

information concerning NXIVM and its employees was learned by O'Hara through his

professional relationship with NXIVM.  Therefore, O'Hara is prohibited from knowingly

revealing the confidences and secrets, or from knowingly using them to the disadvantage of the

client or to the advantage of O'Hara or some third person, such as Ross.  DR 4-101(B).

21

Like the D.C. Bar Rules, the N.Y. Bar Rules allow a lawyer to reveal confidences or secrets "to defend the lawyer or his or her employees or associates against an accusation of wrongful conduct." DR 4-101(C)(4). Also like the D.C. Bar Rules, however, the proper standard under New York Law for determining whether or not an attorney can disclose client confidences and secrets is one of "reasonable necessity," as "derived from Rule 1.6 of the Model Rules of Professional Conduct." First Fed. Sav. & Loan Ass'n v. Openheim, Appel, Dixon & Co., 110 F.R.D. 557, 567 (S.D.N.Y. 1986).

Furthermore, courts have noted that disclosure of such information is only appropriate where the information bears on the attorney's "own role in the alleged misconduct." Morin v. Trupin, 728 F. Supp. 952, 956 n.2 (S.D.N.Y. 1989). In Morin, the attorney for the plaintiffs interviewed the former in-house counsel for several defendants, in exchange for dropping him from the lawsuit. Id. at 953-54. In the interview, the former in-house counsel provided information on several actions, not merely "such information as was necessary to establish his innocence." Id. at 956. The questioning elicited information not bearing directly "on the propriety or legality of" the attorney's activities. Id. Due to that interview, the defendants moved to disqualify the plaintiffs' counsel and, in response, the plaintiffs argued that the disclosures fell within the self-defense exception to the prohibition on the revelation of clients' confidences and secrets. Id. The Court determined that the law did not permit an attorney to aid his or her own defense by disclosing information that was "wholly apart" from his or her involvement in the alleged wrongdoing, and thereby assist parties adverse to the attorney's former client. Id. at 956 n.2; see also Housler v. First Nat'l Bank, 484 F. Supp. 1321, 1323-24 (E.D.N.Y. 1980) (determining that where a former client brought a third party action against their former lawyer, that did not alter the attorney's ethical obligation not to disclose secrets and

confidences; such disclosures would only be permitted "in the narrow context" of the attorney's own defense); Zachair, Ltd. v. Driggs, 965 F. Supp. 741, 755 (D. Md. 1997) (disqualifying plaintiffs' counsel where they had interviewed the defendants' former general counsel, finding that the general counsel, "aided and abetted" by plaintiff's counsel, "disclosed information above and beyond what was needed to absolve himself of liability" and had disregarded protective measures, such as limiting access to the tribunal or seeking appropriate protective orders).

Disclosures permitted by the filing of a malpractice action are "limited." Greig v. Macy's N.E., Inc., 1 F. Supp. 2d 397, 402 n.4 (D.N.J. 1998). In Greig, after the Plaintiff's original counsel had withdrawn, the Plaintiff amended her complaint to include a malpractice claim against her original counsel. Id. at 399. Her original counsel then retained the same attorneys as the other defendant in the action. Id. The Court disqualified the defendants' counsel from representing either defendant in the action, finding that they were involved in the dissemination of protected information from the former attorney. Id. at 405. The Court explicitly rejected the defendants' argument that the privilege had been waived by the malpractice claim. Id. at 400-402. The Court explained that attorneys may only reveal protected information to the extent reasonably necessary to establish his or her defense. The Court further noted:

> Although a former client certainly has to accept the fact that these confidences will be revealed to some extent once she asserts a claim of malpractice against her former attorney, she should not be forced into a situation where these confidences are revealed to her adversaries, who are still involved in pending litigation and whose knowledge of her confidences would cause her the greatest harm.

Id. at 401.

O'Hara's disclosure of Protected Information violated both the D.C. Bar Rules and the N.Y. Bar Rules. O'Hara's disclosure of Protected Information does not meet the "self-defense" exception in those Rules, because O'Hara's disclosure of Protected Information to the defendants in the Ross Action, their counsel, and members of the press is in no way "reasonably necessary"

to his defense of this action, and these disclosures do not bear upon O'Hara's "own role in the alleged misconduct."

O'Hara's actions here are even more egregious than those of the attorneys in the cases referenced above because he is not only disclosing actual information known to him from his representation of the Plaintiffs, but also engaging in wild speculation and promoting falsehoods regarding the Plaintiffs, both to Ross and the press. A protective order is plainly necessary to protect the Plaintiffs' Protected Information from further disclosure.

**D.    There Is Good Cause For An Order Compelling O'Hara To Return The Plaintiffs' Files To Them Because He Is Obligated To Do So By New York Law And The Disciplinary Rules**

Under the disciplinary rules of all relevant jurisdictions and the law of New York State, O'Hara has been obligated to return the Plaintiffs' files to them for some time. Given O'Hara's conduct, Plaintiffs believe that it is imperative that the Court order him to return the Plaintiffs' files to them in order to prevent further dissemination of the Plaintiffs' Protected Information. Additionally, given the record of conduct that necessitated this motion, the Plaintiffs request that the Court order O'Hara not only to return all original documents to the Plaintiffs, but also to require that O'Hara's counsel, rather than O'Hara, himself, maintain any copies of those files that are potentially necessary to O'Hara's defense in this action, so that O'Hara no longer has ready access to the Plaintiffs' Protected Information.

N.Y. Bar Rule DR 2-110(A)(2) provides that attorneys shall "not withdraw from employment until the lawyer has taken steps to the extent reasonably practicable to avoid foreseeable prejudice to the rights of the client, including . . . delivering to the client all papers and property to which the client is entitled and complying with applicable laws and rules." See also N.Y. Bar Rule DR 9-102(C) (providing that attorneys shall promptly deliver to the client all property in the attorneys' possession that the client is entitled to receive).

Similarly, the D.C. Bar Rules provide that "[i]n connection with any termination of representation, a lawyer shall take timely steps to the extent reasonably practicable to protect a client's interests, such as…surrendering papers and property to which the client is entitled. . . ." D.C. Bar Rule 1.16(d).

New York's Court of Appeals has ruled that nearly all files obtained and created by an attorney during the course of his or her representation of a client should be returned upon request by the client.  Sage Realty v. Proskauer Rose Goetz & Mendelsohn L.L.P., 91 N.Y.2d 30, 37 (1997) (noting that "an attorney's fiduciary relationship with a client may continue even after representation has concluded").  Interpreting the prevailing law, the New York State Bar Association's Committee on Professional Ethics stated: "Even without a request, an attorney is obligated to deliver to the client, not later than promptly after representation ends, 'such originals and copies of other documents possessed by the lawyer relating to the representation as the . . . [former] client reasonably needs.'"  New York State Bar Association Committee on Professional Ethics, Opinion 766 (Sept. 10, 2003) (citing Sage Realty, 91 N.Y.2d at 35).

Here, the Plaintiffs have made multiple demands for the return of their files, which O'Hara has largely ignored, all while flagrantly violating his ethical duties by disseminating the Plaintiffs' Protected Information to the press and to individuals adverse to the Plaintiffs.  An order requiring O'Hara to turn over the Plaintiffs' files, allowing his counsel to retain a copy in their possession but not to provide a copy to O'Hara, is appropriate under the D.C. Bar Rules and the N.Y. Bar Rules, in order to prevent O'Hara's further dissemination of the Plaintiffs' Protected Information in breach of his obligations.

**E.    There Is Good Cause For An Order Requiring O'Hara To Produce His Communications With Third Parties Concerning NXIVM And Extending The Length Of O'Hara's Deposition So As To Allow Plaintiffs To Discover The Extent Of O'Hara's Breaches**

Federal Rule of Civil Procedure 30(d)(2) sets a presumptive time limit of one day of seven hours for all depositions.  However, the Court may allow additional time "if needed for a fair examination of the deponent."  Fed. R. Civ. P. 30(d)(2).

Certainly, in this instance, given the apparent breadth of the ethical violations by O'Hara, the damage to the Plaintiffs, and O'Hara's possible violation of an Order of this Court, the Plaintiffs will require additional time to conduct a "fair examination" of O'Hara on those issues, in addition to the many other outstanding issues in this action.  The Plaintiffs have no way to determine the full extent of O'Hara's disclosures of the Plaintiffs' Protected Information without discovery on this issue.  The Plaintiffs intend to take such discovery in order to determine what, if any, additional corrective action needs be taken, and to determine how the Plaintiffs have been prejudiced in this or other actions due to O'Hara's disclosures.  Courts have extended the time for depositions in much less compelling circumstances.  See, e.g., New Colt Holding Corp. v. RJG Holdings, No. 3:03 cv 173 (PCD), 2003 U.S. Dist. Lexis 18036, at *3 (D. Conn. Mar. 26, 2003) (extending defendants time to take a deposition where there were multiple defendants, even though the deponent had already been deposed for ten hours over two days).

In addition, the Plaintiffs seek an order compelling O'Hara to disclose all of his communications with third parties (other than his counsel) concerning the Plaintiffs, Nancy Salzman, or Keith Raniere.  These communications are squarely within the scope of the Plaintiffs' document requests.  (Rennie Dec. ¶ 27, Exh. Z).  O'Hara has failed to respond to that document request or to produce the responsive documents and should be compelled to do so immediately.

The Plaintiffs are entitled to discover what information O'Hara has been disclosing concerning the Plaintiffs or their employees or principals, and to whom O'Hara has been disclosing it.  Notably, although O'Hara's counsel agreed to much of the relief sought in this motion , they stumbled on the Plaintiffs' demand for this information.  (Rennie Dec. ¶ 27, Exhs. AB - AC).  O'Hara's position was that the Plaintiffs should take O'Hara's deposition, ask O'Hara to whom he made disclosures, and then seek production of those communications that O'Hara testified to.  Aside from being inherently inefficient, this process would leave Plaintiffs at the mercy of O'Hara's willingness or ability to testify truthfully concerning his contacts with third persons.

Consequently, the Plaintiffs request that the Court order O'Hara to produce immediately all of his communications with third parties concerning the Plaintiffs or their principals, and extend the length of O'Hara's deposition to two days of seven hours each.[6]

## F.      The Relief Sought Will Not Prejudice The Rights Of Ross

On October 3, 2006, Ross made an overwrought application to this Court requesting permission to intervene for the limited purpose of preserving his alleged rights on motions currently pending in the District of New Jersey, including NXIVM's Motion to Quash the Interfor Subpoenas.  This Court granted Ross the right to be heard on that issue.

Ross's concerns are misplaced.  Clearly, as O'Hara's legal malpractice and breach of fiduciary duties are ultimate issues in this action, this Court must have the ability to determine whether O'Hara performed legal work for NXIVM and whether he owed ethical duties to NXIVM in conjunction with that work.  Furthermore, Ross's rights will not be "unduly

---

[6]      The Plaintiffs seek the limited relief described above in light of the need to stop O'Hara's misguided campaign, but respectfully request that they be allowed to reserve their rights to seek additional remedies once the facts are revealed.

prejudiced" in any way by rulings of this Court.  Indeed, this Court must rule on the Plaintiffs'

application to quash Ross's subpoena to O'Hara, a subpoena that Ross's counsel served under

the caption of this Court.  In any event, this Court is in a better position to rule on the propriety

of O'Hara's campaign than is the Court in New Jersey, where O'Hara is not a party.

**POINT II.     THIS COURT SHOULD ENTER AN ORDER QUASHING ROSS'S
            SUBPOENA TO O'HARA AS IT REQUESTS THE DISCLOSURE OF
            PROTECTED INFORMATION**

Plaintiff NXIVM respectfully requests that this court quash the subpoena that Ross

served on O'Hara in connection with the Ross Action pending in the District of New Jersey (the

"O'Hara Subpoena").  (Rennie Dec. ¶ 22, Exh. S).  As explained below, the O'Hara Subpoena

calls for the inappropriate discovery of attorney-client conversations, attorney work product, and

other confidences and secrets learned by NXIVM's former attorney in connection with his work

on their behalf.  Federal Rule of Civil Procedure 45(c)(3)(A)(iii) provides that a court may quash

a subpoena that "requires disclosure of privileged or other protected matter…."  Olszewski v.

Bloomberg L.P., No. 96 Civ. 3393(RPP), 2000 WL 1843236, at *4 (S.D.N.Y. Dec. 13, 2000).

**A.     The Court Should Not Allow Ross To Depose The Plaintiffs' Former Attorney**

Courts view attempts to depose an opposing party's attorney as "a negative development

in the area of litigation, and one that should be employed only in limited circumstances."

Shelton v. American Motors Corp., 805 F.2d 1323, 1327 (8th Cir. 1986).  "Because deposition of

a party's attorney is usually both burdensome and disruptive, the mere request to depose a

party's attorney constitutes good cause for obtaining a Rule 26(c), Fed. R. Civ. P., protective

order."  Niagara Mohawk Power Corp. v. Stone & Webber Eng'g Corp., 125 F.R.D. 578, 594

(N.D.N.Y. 1989).  Furthermore, such a deposition "merely embroils the parties and the court in

controversies over the attorney-client privilege and more importantly, involves forays into the

area most protected by the work product doctrine — that involving an attorney's mental

impressions or opinions." SEC v. Morelli, 143 F.R.D. 42, 47 (S.D.N.Y. 1992).

The limited circumstances where such a deposition might be appropriate include only

those where:

> the party seeking to take the deposition has shown that (1) no other means exist to
> obtain the information than to depose opposing counsel . . . ; (2) the information
> sought is relevant and nonprivileged; and (3) the information is crucial to the
> preparation of the case.

Shelton, 805 F.2d at 1327.  As explained below, the information that the Ross Subpoena seeks is

privileged, protected by the attorney work product doctrine, and the attorneys' obligation of

confidentiality, and, far from being "crucial," is wholly irrelevant to the Ross Action.

**B.     Communications Among Plaintiffs, O'Hara And Interfor Are Protected By The Attorney-Client Privilege**

In cases such as this one, where there are both federal and state law claims, federal

common law governs evidentiary privileges relating to all claims.  Von Bulow v. Von Bulow,

811 F.2d 136, 141 (2d Cir. 1987).  Under federal common law, the elements of the attorney-

client privilege are as follows:

> (1) the asserted holder of the privilege is or sought to become a client; (2) the
> person to whom the communication was made (a) is a member of the bar of a
> court, or his [or her] subordinate and (b) in connection with this communication is
> acting as a lawyer; (3) the communication relates to a fact of which the attorney
> was informed (a) by his [or her] client (b) without the presence of strangers, (c)
> for the purpose of securing primarily either (i) an opinion of law or (ii) legal
> services or (iii) assistance in some legal proceeding, and not (d) for the purpose of
> committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not
> waived by the client.

Maloney v. Sisters of Charity Hosp., 165 F.R.D. 26, 28-29 (W.D.N.Y. 1995).  The privilege

applies equally to communications from clients to attorneys as it does from attorneys to clients.

Andritz Sprout-Bauer, Inc. v. Beazer East, Inc., 174 F.R.D. 609, 632 (M.D. Pa. 1997).

The presence of a consultant retained by the client and/or the attorney for the purpose of assisting them in prosecuting or defending an action does not affect the privilege. See In re Cendant Corp. Sec. Litig., 343 F.3d 658, 668-69 (3d Cir. 2003) (Garth, C.J., concurring) (determining that communications between an attorney, a client, and a trial consultant should have been protected from discovery by the attorney-client privilege). The mere "[d]isclosure to agents retained by counsel to assist him or her in advising the client and handling legal matters does not operate as a waiver." Andritz, 174 F.R.D. at 632. Rather, the privilege attaches to agents and representatives of counsel providing services in conjunction with the attorney's representation of his or her client. Id.; see also Garrett v. Metro. Life Ins. Co., No. 95 Civ. 2406 (PKL), 1996 WL 325725, at *3 (S.D.N.Y. June 12, 1996) (noting that the work product doctrine "protects material prepared by agents on the attorney's behalf").

In this instance, as explained above, O'Hara was acting as the Plaintiffs' attorney and his communications with the Plaintiffs are protected by the attorney-client privilege. To the extent that Interfor participated in meetings with representatives of NXIVM and its attorneys regarding legal strategy in various actions, including the Ross Action, and the type of information deemed to be necessary in order to prosecute and defend those actions, those conversations are also protected by the attorney-client privilege. (Rennie Dec. ¶ 19(b), Exh. R). Those communications are protected by the attorney-client privilege because: (1) NXIVM was both O'Hara and Interfor's client; (2) O'Hara is a member of the District of Columbia bar, had represented to NXIVM that he was a member of the New York State bar, and was acting in his capacity as counsel, advising NXIVM with respect to its litigation decisions; (3) the communications related to assistance with those litigations and potential litigations; and (4)

NXIVM has asserted the privilege and has not waived it.  Because such communications are privileged, they are protected from discovery.

## C.   The Work Product Doctrine Precludes Disclosure Of Information From Interfor Or O'Hara

Information generated or obtained by O'Hara and Interfor in the course of their work for NXIVM in conjunction with several litigations and potential litigations is also protected from discovery under the work product doctrine.  Federal Rule of Civil Procedure 26(b)(3) partially codifies the work product doctrine.  It provides that:

> a party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and <u>prepared in anticipation of litigation or for trial</u> by or for another party or by or for that <u>other party's representative</u> (including the other party's attorney, <u>consultant</u>, surety, indemnitor, insurer or <u>agent</u>) <u>only</u> upon a showing that the party seeking discovery has <u>substantial need</u> of the materials in the preparation of the party's case and that the party is unable without <u>undue hardship</u> to obtain the substantial equivalent of the materials by other means.  In ordering discovery of such materials when the required showing has been made, <u>the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation</u>.

Fed. R. Civ. P. 26(b)(3) (emphasis added).  The requirement that the materials be "prepared in anticipation of litigation or for trial" merely "requires that the material be prepared in anticipation of *some* litigation, not necessarily in anticipation of the *particular* litigation in which it is being sought."  <u>Kelly v. Ford Motor Co. (In re Ford Motor Co.)</u>, 110 F.3d 954, 966-67 (3d Cir. 1997) (emphasis in original).  Furthermore, in order to warrant protection, work product need not contain legal advice so long as it is prepared in anticipation of litigation.  <u>Id</u>. at 968.

Beyond the language of the Federal Rules, the work product doctrine extends protection to both "documents and things" as well as deposition or interrogatory questions seeking the disclosure of similarly protected information.  <u>United States v. District Council</u>, No. 90 Civ. 5722 (CSH), 1992 WL 208284, at *7 (S.D.N.Y. Aug. 18, 1992) (citing <u>Hickman v. Taylor</u>, 329

31

U.S. 495, 510-11 (1947)).  "[W]hen a party seeks discovery directly from an attorney or an attorney's agent, there is more than a strong likelihood that the concerns underlying the work product doctrine will be implicated."  District Council, 1992 WL 208284, at *12.

There can be no question that Interfor and O'Hara's work consisted of work product. Interfor was retained by NXIVM's attorney O'Hara and provided services in connection with various active and anticipated litigations.  The only issue is whether the Ross can make a sufficient showing to require the disclosure of that work product.

Courts have recognized that there are different standards for "opinion work product" as opposed to ordinary or "fact work product."  Opinion work product is that which encompasses "mental impressions, conclusions, opinions, or legal theories of an attorney" or other representative of a party concerning the litigation.  Maloney, 165 F.R.D. at 30 n.1 (citing Fed. R. Civ. P. 26(b)(3)).  While ordinary work product is discoverable upon a showing of substantial need and undue hardship, opinion work product is "entitled to 'nearly absolute immunity and can be discovered only in very rare and extraordinary circumstances.'"  Maloney, 165 F.R.D. at 30 n.1 (citations omitted); see also Morelli, 143 F.R.D. at 47 (stating that opinion work product "is accorded [an] almost absolute protection from discovery").

As explained below, O'Hara's work product constitutes "opinion" work product which is not subject to discovery here as there are no "exceptional circumstances" present.  Furthermore, even if it were merely ordinary work product, Ross cannot demonstrate a substantial need for the information, as it is not relevant to any claim in the Ross Action.  Ross is on a fishing expedition that seeks to discover evidence that he will use to support his proposed counterclaims, which he is seeking leave to file in the Ross Action, and which have not been filed in any court.

Opinion work product protection is not limited to attorneys; rather it "applies equally to lawyers and non-lawyers alike." In re Cendant Corp. Sec. Litig., 343 F.3d at 665 (citing Duplan Corp. v. Deering Milliken, Inc., 540 F.2d 1215, 1219 (4th Cir. 1976)). This rule recognizes the reality that "attorneys often must rely on the assistance of investigators and other agents in the compilation of materials in preparation for trial." Garrett, 1996 WL 325725, at *3 (citations omitted); see also Fed. R. Civ. P. 26(b)(3) advisory committee's note (1970 amendment) ("The courts have steadfastly safeguarded against disclosure of lawyers' mental impressions and legal theories, as well as mental impressions and subjective evaluations of investigators . . . .") (emphasis added).

Here, the information sought by the O'Hara Subpoena includes the mental impressions, opinions, conclusions, and legal theories of both the Plaintiffs' attorneys and their investigator Interfor. The specific information sought and developed by Plaintiffs' former attorneys in conjunction with their investigator is protected from disclosure as opinion work product absent extraordinary circumstances. Ross cannot point to any "extraordinary circumstances" that would justify the disclosure of this information.

To the extent that the O'Hara Subpoena seeks information that is ordinary or "fact" work product, as opposed to "opinion" work product, such information is still not discoverable, because Ross cannot demonstrate any substantial need for the information. There are no pending claims to which such information is at all relevant. See, e.g., Blum v. Schlegel, 150 F.R.D. 38, 39 (W.D.N.Y. 1993) (noting that "the parties should not be permitted to roam in shadow zones of relevancy and to explore matter which does not presently appear germane on the theory that it might conceivably become so"); Todd v. Merrell Dow Pharm. Inc., 942 F.2d 1173, 1178 (7th Cir. 1991) (finding that the district court properly curtailed an attempted "virtually boundless

33

fishing expedition").  Even if Ross were to file a claim based on the information that O'Hara has

improperly revealed, as he has proposed to do in the Ross Action, no discovery at all should be

allowed with respect to that claim until it is determined whether or not the claim should be

dismissed because it is based on information that was improperly revealed by an attorney in

violation of his ethical obligations.  Simply put, Ross does not get to make that decision

unilaterally .

**D.     There Has Been No Waiver Of Either Attorney-Client Or Work Product Protection**

To the extent that O'Hara has disclosed any information to Ross or the press in breach of

his fiduciary duties and ethical obligations, such disclosure does not waive the attorney-client

privilege or work product doctrine in a situation where, as here, the Plaintiffs have promptly

alerted Ross to the protected nature of the information and filed this motion to protect their

rights.

1.     There Has Been No Waiver of the Attorney-Client Privilege

Several courts in the Second Circuit have found that only the client may waive the

attorney-client privilege, and that an attorney may not do so without the client's consent.

Maloney, 165 F.R.D. at 29; Connecticut Mut. Life Ins. Co. v. Shields, 18 F.R.D. 448, 451

(S.D.N.Y. 1955).  Under such a standard, there would clearly be no waiver of the attorney-client

privilege in this case, where O'Hara disclosed Protected Information without authorization.

Other courts have evaluated claims of waiver of the attorney-client privilege in the case

of an inadvertent disclosure (which applies equally to an involuntary disclosure, as is the case

here) with reference to the following factors:

(1) the reasonableness of the precautions taken to prevent inadvertent disclosure
in view of the extent of the document production[;]
(2) the number of inadvertent disclosures[;]
(3) the extent of the disclosure[;]
(4) the promptness of measures taken to rectify the disclosure[;] and

34

(5) whether the overriding interests of justice would or would not be served by relieving the party of its error.

Hydraflow, Inc. v. Enidine, Inc., 145 F.R.D. 626, 637 (W.D.N.Y. 1993); see also Maldonado v. New Jersey, 225 F.R.D. 120, 128 (D.N.J. 2004).

In Maldonado, an anonymous individual appeared to have surreptitiously obtained a letter from the defendants to their attorney and provided it to the plaintiff. Id. at 125-26. Upon realizing the disclosure, the defendants asserted the attorney-client privilege and work product doctrine, and sought the return of the information. Id. at 126. In determining that there had been no waiver of the attorney-client privilege, the court noted that: the defendants took reasonable precautions to prevent disclosure, even though the letter did eventually end up in the plaintiff's possession; there had only been one disclosure to the plaintiff; the disclosure was substantial, providing a "blue-print to Defendants' thought processes and trial strategy"; while the defendants should have been on notice of the disclosure several months earlier, they acted reasonably and promptly after counsel became aware of the disclosure; and the overriding interests of justice would not be served by punishing the defendants with a finding of waiver, particularly since the disclosure was *involuntary* as opposed to *inadvertent*. Id. at 129-30.

In the present case, although NXIVM lacks information as to the frequency and substantiality of any disclosures, a finding of waiver would be similarly improper given that: NXIVM has taken reasonable steps to prevent disclosure, and indeed, there would have been no such disclosures if not for the unprecedented breach of a fiduciary duty by their former attorney, O'Hara; the individual making the disclosure had substantial information concerning the plaintiffs' strategy in the Ross Action; NXIVM acted promptly after learning of the possibility of disclosure to seek relief in the District of New Jersey in addition to this Court, even while they remain uncertain as to the extent and amount of any disclosures; and finally, because any such

disclosures are involuntary as opposed to merely inadvertent, the interests of justice would not be served by finding a waiver of the attorney-client privilege.

2.      There Has Been No Waiver of Work Product Protection

In Maldonado, the court also considered the issue of whether there had been waiver of work product protection.  The court noted that the waiver inquiry is narrower in the work product context than the attorney-client privilege context.  Id. at 131.  In considering whether work product immunity has been waived, the relevant inquiry is whether the information was disclosed to an adversary.  Id.; Gramm v. Horsehead Indus., Inc., No. 87 Civ. 5122 (MJL), 1990 WL 142404, at *5 (S.D.N.Y. Jan. 25, 1990).  Furthermore, there is no "subject matter" waiver of work product protection, as the disclosure of some protected documents does not eviscerate the protection of all documents concerning the same subject.  Maldonado, 225 F.R.D. at 131 (citing Duplan Corp., 540 F.2d at 1222 (4th Cir. 1976)).

Despite the fact that the document in question had been disclosed to an adversary, the Maldonado court determined that "[i]t would completely stand the work-product doctrine on its head to allow discovery of an attorney's work-product simply because that letter inexplicably found its way into the adversary's hands."  Maldonado, 225 F.R.D. at 132.  The court found that work product protection had not been waived given that the defendants had not taken any action that "'substantially increase[d]' the possibility of an opposing party obtaining the information." Id.; see also Gramm, 1990 WL 142404, at *7 (finding that work product protection was not waived as defendant's actions were not "so lax, careless, inadequate or indifferent to consequences as to constitute a waiver").

Similarly, in the present action, the Plaintiffs have not taken any action which would lead to the disclosure of the work product information.  Rather, the unprecedented actions of O'Hara in violation of the D.C. Bar Rules and the N.Y. Bar Rules appear to be solely to blame for

whatever disclosures have taken place.  Consequently, it would defeat the interests of justice to punish the Plaintiffs for the actions of their former attorney over whom they quite obviously have no control.

**POINT III.    THE CRIME-FRAUD EXCEPTION IS NOT APPLICABLE**

Both O'Hara and Ross have asserted that the crime-fraud exception applies to any privileges or immunities that otherwise apply to the work that O'Hara has done for NXIVM or the other Plaintiffs.  The crime-fraud exception is substantially narrower than Ross and O'Hara would like the Court to believe.  Rather:

> The crime-fraud exception does not apply merely upon a showing that the client communicated with counsel while the client was involved in the alleged wrongdoing.  The exception applies only upon a showing of probable cause to believe that the communications with counsel were intended in some way to facilitate or to conceal the wrongdoing.

Maloney, 165 F.R.D. at 29.  The exception applies only if the client's communication "was *itself* in furtherance of the crime or fraud"; the exception will not apply "simply because privileged communication would provide an adversary with evidence of a crime or fraud."  United States v. Richard Roe, Inc. (In re Richard Roe, Inc.), 68 F.3d 38, 40-41 (2d Cir. 1995).  Moreover, "[t]o subject the attorney-client communications to disclosure, they must *actually have been made with an intent to further an unlawful act*."  United States v. Jacobs, 117 F.3d 82, 88 (2d Cir. 1997) (emphasis added).

The Second Circuit has set forth a two-step crime-fraud exception test:

> A party wishing to invoke the crime-fraud exception must demonstrate that there is a factual basis for a showing of probable cause to believe that a fraud or crime has been committed and that the communications in question were in furtherance of the fraud or crime. This is a two-step process. First, the proposed factual basis must strike "a prudent person" as constituting "a reasonable basis to suspect the perpetration or attempted perpetration of a crime or fraud, and that the communications were in furtherance thereof."  Once there is a showing of a factual basis, the decision whether to engage in an in camera review of the

evidence lies in the discretion of the district court. Second, if and when there has
been an in camera review, the district court exercises its discretion again to
determine whether the facts are such that the exception applies.

Id. at 87 (citations omitted); see also, e.g., John Doe, Inc. v. United States (In re John Doe, Inc.),

13 F.3d 633, 637 (2d Cir. 1994); In re Grand Jury Subpoena Duces Tecum Dated Sept. 15, 1993

(Marc Rich & Co.), 731 F.2d 1032, 1039 (2d Cir. 1994); Fry v. McCall, 95 Civ. 1915, 1998 WL

273035, at *4 (S.D.N.Y. May 28, 1998); Liberty Envtl. Sys., Inc. v. County of Westchester, 94

Civ. 7431, 1997 WL 471053, at *5 (S.D.N.Y. Aug. 18, 1997).

Ross's accusations of wrongdoing concern the conduct of Interfor's investigation of

Ross. O'Hara appears to be speculating as to how Interfor obtained information concerning

Ross's bank and phone records. Probable cause is not established by such speculation,

notwithstanding that Ross has seen fit to put a caption on that speculation and file it as a

proposed complaint. Absent a showing of probable cause, any suggestion that this Court should

conduct an in camera review must be denied. In re In-Store Advertising Sec. Litig., 163 F.R.D.

452, 459 (S.D.N.Y. 1995). "Such a review is not, however, to be routinely undertaken…as a

substitute for a party's submission of an adequate record in support or in opposition to privilege

claims. Rather, before a district court may engage in in camera review at the request of the party

opposing the privilege, that party must present evidence sufficient to support a reasonable belief

that in camera review may yield evidence that establishes the exception's applicability." Id.

(internal citations and quotations omitted). As in In-Store Advertising, O'Hara can not produce

any evidence that "communications were made or work product produced in furtherance of an

ongoing or future fraud." Id.

Ross also claims that Interfor's investigatory scheme, carried out at O'Hara's direction,

violated the ethical rules because it constituted an improper contact with Ross at counsel's

direction at a time when Ross was represented by counsel. It is noteworthy that courts have held

38

that nearly identical investigations carried out by investigators retained by attorneys did not

violate any ethical obligations.  See Gidatex, S.r.L. v. Campaniello Imports, Ltd., 82 F. Supp. 2d

119, 126 (S.D.N.Y. 1999); Apple Corps Ltd. v. Inter'l Collectors Soc., 15 F. Supp. 2d 456

(D.N.J. 1998); see also Garrett, 1996 WL 325725, at *5-6.

Notwithstanding Ross's overwrought descriptions of the events that have led to the

present state of affairs, the only victim here is NXIVM, whose former counsel:  (i) violated New

York law by practicing law without a license and now seeks to cover that fact up by denying

what he previously admitted – that he was NXIVM's counsel; (ii) violated the N.Y. Bar Rules

and the D.C. Bar Rules by disclosing the confidences and secrets of his client; (iii) plainly

violated an order of this Court requiring him not to provide information concerning NXIVM to

third parties; and (iv) embarked on a scheme to reveal the confidences and secrets of his client,

embellished by improbable tales of criminal wrongdoing, merely because his former clients

would not settle their differences with him on terms that he found acceptable.  To allow Ross to

perpetuate this sideshow would be to foster the very injury that O'Hara has set out to create.  The

O'Hara Subpoena should be quashed.

## CONCLUSION

For the foregoing reasons, the Plaintiffs respectfully request that the Court enter an order: (i) prohibiting O'Hara from disclosing their Protected Information to third parties; (ii) requiring O'Hara to return the Plaintiffs' files to them; (iii) compelling O'Hara immediately to produce all communications with third parties (other than his counsel) concerning NXIVM or the Plaintiffs, or the principals of NXIVM; (iv) extending the Plaintiffs' time to depose O'Hara to a total of two days of seven hours each; and (v) quashing the subpoena issued to O'Hara by Ross in connection with NXIVM Corp. v. Sutton, 06 CV 01051 (DMC/MF).

PROSKAUER ROSE LLP
*Attorneys for the Plaintiffs*

By: _Douglas C. Rennie_
Peter J.W. Sherwin (Bar No. 513614)
Scott A. Eggers (Bar No. 514095)
Douglas C. Rennie (Bar No. 513631)