**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**NXIVM CORPORATION et al.,**

                     **Plaintiffs,**            **1:05-cv-1546**
                                                  **(GLS/RFT)**

        **v.**

**JOSEPH J. O'HARA et al.,**

                     **Defendants.**
_____

**APPEARANCES:**             **OF COUNSEL:**

**FOR THE PLAINTIFFS:**
_Clare W. Bronfman and Sara R._
_Bronfman_
Damon, Morey Law Firm         BERNARD SCHENKLER, ESQ.
200 Delaware Avenue          WILLIAM F. SAVNIO, ESQ.
12th Floor
Buffalo, NY 14202-2150

**FOR THE DEFENDANT:**
_Joseph J. O'Hara_
Pro Se
99 Vly Road
Albany, NY 12205

**Gary L. Sharpe**
**Chief Judge**

<u>**MEMORANDUM-DECISION AND ORDER**</u>

**I.** <u>**Introduction**</u>

Plaintiffs[1] commenced this action alleging, among other things, that defendant Joseph J. O'Hara failed to repay certain loans as required by promissory notes that he executed in favor of plaintiffs Clare W. Bronfman and Sara R. Bronfman ("the Bronfmans").  (*See* Dkt. No. 80 ¶¶ 91-93; *see generally* Dkt. No. 1, Attach. 2.)  Pending is the Bronfmans' three-branch motion seeking: (1) to renew a prior motion for relief under Fed. R. Civ. P. 60(b) from this court's September 27, 2007 judgment; (2) partial summary judgment on their claims that O'Hara failed to repay the loans as required by the promissory notes; and (3) judgment pursuant to Rule 54(b).  (*See* Dkt. No. 118.)  For the reasons that follow, the Bronfmans' motion is granted.

## II. Background

### A.   Facts[2]

In 2004, Clare and Sara Bronfman each loaned $1,000,000 to O'Hara.  (*See* Pls.' Statement of Material Facts (SMF) ¶¶ 1-3, Dkt. No. 118, Attach. 2.)  In exchange for the loans, O'Hara gave both of the

---

[1] NXIVM Corporation, Executive Success Programs, Inc., Alex Betancout, Barbara Bouchey, Clare W. Bronfman, Edgar Boone, Ellen Gibson, Sara R. Bronfman, Pamela Cafritz, Suzanne Kemp, Wayne Bates, Luis Montes, and Franca DiCrensenzo.  (*See* Dkt. No. 1, Attach. 2; Dkt. No. 80.)

[2] Unless otherwise stated, the facts are undisputed.

Bronfmans a promissory note and option to purchase certain real property. (*See id.* ¶ 5; Dkt. No. 118, Attach. 3 at 9-25.)  The promissory notes, which were virtually identical, both provided for repayment of the loans with interest at five percent (5%) per annum on December 31, 2006.  (*See* Dkt. No. 118, Attach. 3 at 9-15.)  The notes also contained a forum selection clause mandating that any legal action pertaining to them be commenced in "New York State Supreme Court in Albany County, NY."  (*See id.* at 10, 13.)  Clare Bronfman's option agreement provided that, in exchange for her $1,000,000 loan, she could elect to purchase from O'Hara a parcel of property situated in the Town of New Baltimore, New York ("New Baltimore property") for $1,000,000.  (*See id.* at 17-20.)  In exchange for Sara Bronfman's $1,000,000 loan, O'Hara gave her an option to purchase property located in the City of Saratoga Springs ("Saratoga property") for $750,000.  (*See id.* at 22-25.)  Before the December 31, 2006 maturity date of the notes, the Bronfmans gave O'Hara notice of their intention to exercise their options.  (*See id.* ¶¶ 27-28.)  While the parties dispute why the subject properties were not transferred to the Bronfmans, it is clear that they were not.  (*See id.* ¶ 28; Def.'s SMF ¶ 10, Dkt. No. 126.)

**B.**   **Procedural History**

In September 2005, this litigation was commenced in the Supreme

Court of the State of New York against O'Hara and codefendants Douglas

Rutnik and Denise F. Polit.[3]  (*See* Dkt. No 1, Attach. 1.)  As initially plead,

the Complaint contained no claim regarding the promissory notes, which

had not yet become due.  (*See id.*)  Defendants removed the action to the

Southern District of New York, (*see* Dkt. No. 1), and that court granted a

later motion by O'Hara and Polit seeking to transfer venue to this District.

(*See* Dkt Nos. 3, 26.)  Plaintiffs ultimately stipulated to the dismissal of

Rutnik, (*see* Dkt. Nos. 45-46), and filed a Supplemental Complaint on

January 26, 2007, which added a cause of action seeking recovery on the

then-due promissory notes.  (*See* Dkt. No. 80.)  O'Hara and Polit joined

issue on February 5, 2007.  (*See* Dkt. No. 81.)

At some point, the parties began settlement discussions and, on

August 23, 2007, they stipulated to a settlement in open court before

Magistrate Judge Randolph F. Treece.  (*See* Dkt. No. 106.)  As pertinent

here, the settlement required O'Hara, or an entity that he controlled, to

quitclaim deed the New Baltimore and Saratoga properties to the

---

[3] Even before filing in Supreme Court, plaintiffs commenced an action in this court on
August 18, 2005.  (*See* Dkt. No. 1, 1:05-cv-1045.)  Plaintiffs ultimately withdrew their claims in
that action, however.  (*See* Dkt. No. 27, 1:05-cv-1045.)

Bronfmans subject to any existing liens.  (*See* Dkt. No. 103 at 5.)  O'Hara

was further obligated to discharge all liens that existed on the properties,

pay the Bronfman sisters $200,000, and execute warranty deeds upon

discharge of any liens—all by November 30, 2007.  (*See id.* at 5-6.)  In the

event that O'Hara was unable to discharge the liens or pay $200,000 by

November 30, 2007, he had the one-time option of extending his deadline

for performance to February 28, 2008, in which case he would be obligated

to pay interest at the prime rate on the money owing to the Bronfmans.[4]

(*See id.* at 6.)  This court thereafter entered judgment dismissing the entire

action by reason of settlement on September 27, 2007.  (*See* Dkt. No.

104.)

　　　　Two months after judgment was entered, plaintiffs' counsel

requested a conference with Judge Treece to determine whether the

settlement would be vacated in light of a "misrepresentation" by O'Hara

that suggested his inability to timely comply with the terms of the

---

[4] The remaining terms of the settlement pertained to other causes of action and required O'Hara to, among other things, resign his position as Executive Director of the Ethical Foundation, "a tax-exempt foundation that would pursue scientific research," "take all reasonable good faith steps to ensure that control of the Ethical Foundation is transferred to NXIVM or its designee," and return $232,000 to individuals who donated that money to the Ethical Foundation, or transfer those funds to the Ethical Foundation.  (Compl. ¶¶ 33, 35; Dkt. No. 103 at 6.)  O'Hara apparently followed through on these obligations.  (*See* Dkt. No. 113, Attach. 2 ¶¶ 17, 28.)

settlement agreement.  (Dkt. No. 105.)  Although the parties appeared for

that conference, apparently no action was taken by the court.[5]  Despite any

misrepresentation O'Hara may have made regarding the encumbrances on

the properties, however, his time to perform under the settlement

agreement had not yet come to pass.

On April 4, 2008, plaintiffs' counsel advised the court that O'Hara

failed to perform as required by the settlement, and another telephone

conference was held to discuss the matter.  (*See* Dkt. No. 107.)  By text

only order dated April 29, 2008, Judge Treece permitted the Bronfmans to

file a motion to set aside the judgment, which was premised upon the

settlement agreement.[6]  On June 29, 2008, the Bronfmans and plaintiffs

Barbara Bouchey and NXIVM Corporation filed such a motion seeking,

among other things, to vacate this court's September 27, 2007 judgment

and restore the Bronfmans' claims.  (*See* Dkt. No. 113.)  Before resolution

---

[5] The Bronfmans' counsel at the time, Paul Yesawich, requested that O'Hara "provide additional collateral, or pledge additional assets, to be certain that the Bronfman sisters would receive the benefit of the bargain they made when they settled their claim."  (Dkt. No. 113, Attach. 2 ¶ 16.)  Judge Treece denied the Bronfmans' application, however.  (*See id.*)

[6] Although Judge Treece initially set a deadline for such filing, by a series of text only orders dated May 6, 2008 and May 30, 2008, he granted a request for an extension and then informed the parties that "the Court will not impose a time-limit on [the] intended motion" other than the "Rules of Procedure (Local and Federal) and any other applicable legal doctrine regarding the proper course of action and the time-frame within which to act."

of the motion, O'Hara informed the court that he had filed for bankruptcy and, thus, the motion was subject to the automatic stay provision of 11 U.S.C. § 362.  (*See* Dkt. No. 114.)  By text only order dated July 28, 2008, this court acknowledged the bankruptcy stay and removed the motion from the docket with leave to renew if and when the stay was lifted and further proceedings were necessary or desirable.  The instant motion was filed by the Bronfmans on January 30, 2012.  (*See* Dkt. No. 118.)  O'Hara subsequently commenced an action on February 9, 2012 that names, among others, the Bronfmans, and William Savino and Bernard Schenkler—their counsel—as party defendants; that action is pending in this court as well.  (*See* Dkt. No. 1, 1:12-cv-252.)

### III.  Standards of Review

**A.**   **Rule 60(b)**

Fed. R. Civ. P. 60(b) provides a mechanism by which a court may relieve a party from a final judgment or order.  Among the grounds for relief from such a final judgment are: (1) fraud, misrepresentation, or misconduct of an opposing party; and (2) "any other reason that justifies relief."  Fed. R. Civ. P. 60(b)(3), (6).  A motion seeking relief from a final judgment must be made within a "reasonable time," and, in the case of fraud, no more

7

than one year after entry of judgment.  Fed. R. Civ. P. 60(c).  A movant

seeking relief from a judgment under Rule 60(b)(3) on the basis of fraud

has the burden of establishing such fraud by clear and convincing

evidence.  *See Green v. Phillips*, 374 F. App'x 86, 88 (2d Cir. 2010).  Rule

60(b)(6), on the other hand, "'is properly invoked where there are

extraordinary circumstances, or where the judgment may work an extreme

and undue hardship.'"  *Congregation Mischknois Lavier Yakov, Inc. v. Bd.*

*of Trustees for Vill. of Airmont*, 301 F. App'x 14, 16 (2d Cir. 2008) (quoting

*Marrero Pichardo v. Ashcroft*, 374 F.3d 46, 56 (2d Cir. 2004)).

## B.    Summary Judgment

The standard of review pursuant to Fed. R. Civ. P. 56 is well

established and will not be repeated here.  For a full discussion of the

standard, the court refers the parties to its decision in *Wagner v. Swarts*,

No. 1:09–cv–652, 2011 WL 5599571, *4 (N.D.N.Y. Nov. 17, 2011).

## IV.  Discussion

Before reaching the merits of the Bronfmans' motion, the court is

faced with an allegation by O'Hara that, because of his newly-filed action

naming the Bronfmans' current counsel as defendants, counsel "should not

be allowed to represent the Bronfman sisters in this matter."  (Dkt. No. 122

8

at 3.)  O'Hara further asserts that "inherent conflicts-of-interest . . . will invariably arise [and] mandate that the Bronfman sisters be represented by some other law firm or attorney."  (*Id.*)  The court finds no merit whatsoever in O'Hara's unsupported and unexplained contention.

Liberally construing his argument, O'Hara seeks to disqualify the Bronfmans' counsel, and the law firm with which they are affiliated, for what he claims is an unavoidable conflict of interest.  (*See id.*)  While disqualification of counsel is within the sound discretion of the court, *see Cresswell v. Sullivan & Cromwell*, 922 F.2d 60, 72 (2d Cir. 1990), it is disfavored within this Circuit and should only be ordered when necessary, usually: (1) to avoid a conflict that "undermines the court's confidence in the vigor of the attorney's representation of his client"; or (2) where the attorney may potentially use privileged information against a former client to the advantage of his current client.[7]  *Bd. of Educ. of N.Y. v. Nyquist*, 590 F.2d 1241, 1246 (2d Cir. 1979).

In this case, there is no indication that the Bronfmans' counsel has a

---

[7] In deciding whether disqualification is appropriate, courts are guided by the American Bar Association and state disciplinary rules; however, "not every violation of a disciplinary rule will necessarily lead to disqualification."  *Hempstead Video, Inc. v. Inc. Vill. of Valley Stream*, 409 F.3d 127, 132 (2d Cir. 2005); *see Ehrich v. Binghamton City Sch. Dist.*, 210 F.R.D. 17, 24 (N.D.N.Y. 2002).

conflict of interest which requires disqualification.  While counsel and the

law firm with which they are affiliated were named by O'Hara as

defendants in case No. 1:12-cv-252, there is no indication that the

attorneys and firm would take a position in that litigation which is materially

adverse to the Bronfmans.[8]  (*See* Dkt. No. 1, 1:12-cv-252.)  More

importantly, O'Hara's application for disqualification must be denied

because counsels' representation of the Bronfmans will not "taint the trial

by affecting [counsels'] presentation of [the] case."  *Bottaro v. Hatton*

*Assocs.*, 680 F.2d 895, 896 (2d Cir. 1982); *see GSI Comm. Solutions, Inc.*

*v. BabyCenter, L.L.C.*, 618 F. 3d 204, 209 (2d Cir. 2010) ("[D]isqualification

is warranted only if 'an attorney's conduct tends to taint the underlying

trial.'" (quoting *Nyquist*, 509 F.2d at 1246)).

The court now turns to the merits of the Bronfmans' motion seeking

to vacate the judgment entered on September 27, 2007, (*see* Dkt. No.

104), and partial summary judgment on the unpaid promissory notes.  (*See*

---

[8] As applicable here, New York's Rules of Professional Conduct, which are in force in this District per the Local Rules of Practice, *see* N.D.N.Y. L.R. 83.4(j), do not specifically forbid an attorney or his law firm from representing a client when that attorney or firm and the client are co-defendants in other litigation.  However, the Rules generally preclude a lawyer's representation of a client if it would require him to advocate for differing interests.  *See, e.g.*, Rules of Professional Conduct (N.Y. Comp. Codes R. & Regs. tit. 22, § 1200.0) rule 1.7(a)(1), rule 1.9(a), (b).

Dkt. No. 118.)

A.   **Motion to Vacate**

The Bronfmans contend that the September 27, 2007 judgment

should be vacated "because the settlement upon which it was based could

not be consummated."  (Dkt. No. 118, Attach. 1 at 7-14.)  Specifically, the

Bronfmans contend that O'Hara committed fraud by failing to disclose the

full extent of the encumbrances on the properties he was to later transfer to

the Bronfmans as part of the settlement, (*see id.* at 8-10), and O'Hara's

failure to perform as required by the settlement agreement constitutes an

extraordinary circumstance which justifies vacating the judgment.  (*See id.*

at 10-14.)[9]  O'Hara generally opposes the Bronfmans' motion or,

alternatively, seeks consolidation of this action with case No. 1:12-cv-0252

under Fed. R. Civ. P. 42(a).[10]  (*See* Dkt. No. 122 at 2-6.)  Instead of directly

responding to the Bronfmans' arguments, O'Hara avers that their motion

should be denied because they have unclean hands, engaged in unfair

legal tactics, and negotiated the settlement in bad faith.  (*See id.* at 3-7.)

---

[9] The court construes the Bronfmans' motion as seeking relief only from so much of the judgment as disposed of their claims related to the promissory notes.

[10] The court notes that consolidation is inappropriate because, despite what O'Hara insinuates, there are no common questions of law or fact.  *See* Fed. R. Civ. P. 42(a); (Dkt. No. 122 at 6; *compare* Dkt. No. 80, *with* Dkt. No. 1, 1:12-cv-252.)

The court agrees with the Bronfmans.

Because the court finds that vacatur is justified in light of extraordinary circumstances, it need not reach the issue of whether fraud, misrepresentation, or misconduct on the part of O'Hara has been sufficiently demonstrated to warrant relief from judgment.  As described above, the settlement of all claims in this action contemplated, among other things, that O'Hara would convey the New Baltimore and Saratoga properties unencumbered to the Bronfmans and pay an additional $200,000 to them.  (*See* Dkt. No. 103 at 5-6.)  It is undisputed that O'Hara did not fulfill his obligation under the settlement agreement.  (*See* Dkt. No. 118, Attach. 3 ¶ 21; Dkt. No. 118, Attach. 4 ¶¶ 6-7.)  Moreover, the Bankruptcy Court authorized a bankruptcy trustee to otherwise dispose of the properties O'Hara promised to convey to the Bronfmans.  (*See* Dkt. No. 118, Attach. 12.)  O'Hara's failure has left the Bronfmans with no meaningful way to enforce the judgment and, thus, relief from this court's judgment is appropriate and necessary under Fed. R. Civ. P. 60(b)(6).  *See Frutiger v. Hamilton Cent. Sch. Dist.*, No. 90-CV-303, 1993 WL 358480, at *4 (N.D.N.Y. Sept. 9, 1993) ("It is a well-established principle that Rule 60(b)(6) is a proper procedural mechanism to vacate a judgment when, as

12

in this case, the settlement agreement underlying that judgment has been breached.").  Accordingly, the Bronfmans' motion seeking relief from this court's judgment as to their promissory notes, which was made within a reasonable time,[11] is granted.[12]

## B.   Partial Summary Judgement

The Bronfmans seek partial summary judgment on their claims that O'Hara failed to repay the promissory notes.  (*See* Dkt. No. 118, Attach. 1 at 14-24.)  In support of their application, the Bronfmans assert that O'Hara has admitted that he executed the notes, he received $1,000,000 from each of them, and did not repay the loans upon maturity—all of which, taken together, entitle them to summary judgment.  (*See id.* at 15, 19-20.) O'Hara counters that summary judgment is inappropriate because the Bronfmans have unclean hands, used "unfair legal tactics," engaged in bad faith during settlement negotiations, and "unresolved questions of law and

---

[11] In fact, the Bronfmans brought the issue to Judge Treece's attention when they first suspected that O'Hara might not perform under the settlement and moved—after consultation with Judge Treece—approximately four months after O'hara failed to convey the properties as required under the settlement agreement.  (*See* Dkt. No. 103 at 5-6; Dkt. Nos. 105, 107, 111, 112, 113.)

[12] For clarity, it is noted that the judgment, (*see* Dkt. No. 104), stands in all other respects.

fact" exist.[13]  (*See* Dkt. No. 122 at 3-6.)  Specifically, on his last argument,

O'Hara contends that summary judgment cannot be granted because the

Bronfmans did not execute the promissory notes, the notes were "part of a

multi-faceted business transaction rather than stand-alone agreements,"

the Bronfmans' claims regarding the notes are "intertwined with many of

the other claims and counterclaims that are part of the original August

2005 lawsuit," the promissory notes "contained usurious interest

provisions," and the notes were satisfied by the Bronfmans' exercise of

their options.  (*Id.* at 6; *see* Def.'s SMF ¶¶ 9-10, 14-17.)  The court agrees

with the Bronfmans.[14]

        "'To establish prima facie entitlement to judgment as a matter of law

with respect to a promissory note, a plaintiff must show the existence of a

promissory note executed by the defendant containing an unequivocal and

unconditional obligation to repay and the failure by the defendant to pay in

accordance with the note's terms.'"  *Frankini v. Landmark Constr. of*

---

[13] In his response to the Bronfmans' statement of material facts, O'Hara also suggests that venue is improper in this court in light of the provision in the promissory notes requiring commencement of legal action in New York State Supreme Court in Albany County.  (*See* Def.'s SMF ¶¶ 13-17; Dkt. No. 118, Attach. 3 at 10, 13.)  O'Hara waived that defense, however, by failing to assert it in his answer.  (*See* Dkt. No. 81; Fed. R. Civ. P. 12(h)(1).

[14] Consistent with the parties' agreement memorialized in the promissory notes, the notes are to "be construed in accordance with the laws of the State of New York."  (*See* Dkt. No. 118, Attach. 3 at 10, 13.)  The court therefore applies New York law.

*Yonkers, Inc.*, 91 A.D.3d 593, 594 (2d Dep't 2012) (quoting *Jin Sheng He v. Sing Huei Chang*, 83 A.D.3d 788, 789 (2d Dep't 2011)).

Here, the Bronfmans have provided ample proof to demonstrate that they are entitled to summary judgment.  The promissory notes, which bear O'Hara's signature, unconditionally required him to repay the loans by December 31, 2006.  (*See* Dkt. No. 118, Attach. 3 at 9-11, 13-15.)  O'Hara also admitted that he executed the notes and had not paid as of the end of 2007.  (*See* Dkt. No. 81 ¶ 11; Dkt. No. 118, Attach. 18 at 9, 10.)  Notably, O'Hara has not even attempted to refute the affidavits of the Bronfmans denying that he has—at any time—repaid the loans or permitted them to exercise their option agreements, which would have excused repayment of $1,000,000 to Clare Bronfman and $750,000 to Sara Bronfman.  (*See* Dkt. No. 118, Attach. 3 ¶¶ 17, 28, 30; Dkt. No. 118, Attach. 3 at 17, 23; Dkt. No. 118, Attach. 4 ¶¶ 2, 6-7.)  Thus, the Bronfmans have met their burden. *See Wagner*, 2011 WL 5599571, at *4.

Turning to O'Hara's specific arguments, the court deems them inapplicable or immaterial.  First, the doctrine of unclean hands has no application where, as here, the relief sought is for money damages only. *See Wells Fargo Bank v. Hodge*, 92 A.D.3d 775, 776 (2d Dep't 2012) ("The

doctrine of unclean hands is used only to bar the grant of equitable relief."). Second, whether or not the Bronfmans used unfair legal tactics or engaged in bad faith during settlement negotiations is really of no moment.  The fact remains that O'Hara executed the notes and failed to fulfill his unconditional obligation to repay them or permit the Bronfmans to exercise their options.  (*See* Dkt. No. 118, Attach. 3 ¶¶ 17, 28, 30; Dkt. No. 118, Attach. 4 ¶¶ 2, 6-7.)

O'Hara raises no issues of fact that preclude summary judgment. His conclusory assertions that adjudication of the promissory notes, which were not "stand-alone agreements," is tied up with "other claims and counterclaims" are unpersuasive.  (Dkt. No. 122 at 6.)  In the face of the promissory notes, which are, by their terms, unconditional, O'Hara has failed to point to how other claims or relief sought by the Bronfmans are dependent upon the resolution of their causes of action regarding the notes.  If what O'Hara is really attempting to argue is that the option agreements altered the rights and obligations of the parties regarding his repayment of the notes—a stretch, but plausible interpretation of his opposition to summary judgment, (*see, e.g.*, Def.'s SMF ¶ 5)—he has still failed to demonstrate a triable issue of genuine fact.  This argument turns

on interpretation of the promissory notes and option agreements.

Under New York law, "[i]nterpretation of an unambiguous contract provision is a function for the court, and matters extrinsic to the agreement may not be considered when the intent of the parties can be gleaned from the face of the instrument." *Teitelbaum Holdings v. Gold*, 48 N.Y.2d 51, 56 (1979); *see W.W.W. Assocs., Inc. v. Giancontieri*, 77 N.Y.2d 157, 163-64 (1990). Here, the notes and options are unambiguous and it is clear that the options did not excuse or otherwise alter O'Hara's obligation to repay the loans plus interest. It is obvious, instead, that the notes merely acted as security for the Bronfmans' loans.

As relevant here, Clare Bronfman's note provided that:

> O'Hara . . . hereby promises to pay to the order of Clare W. Bronfman . . . the sum of One Million Dollars ($1,000,000), along with the applicable amount of interest due with respect to each of the applicable "Transfer Amounts and Transfer Dates" that are set forth in Addendum A at the rate of five percent (5%) per annum. In this regard, the payment of the entire $1,000,000 — plus all of the applicable interest thereon — will be due and payable on December 31, 2006.

(Dkt. No. 118, Attach. 3 at 9.) The addendum referenced in the note set forth that Clare Bronfman made two transfers of $500,000 each to O'Hara

17

on or about July 15, 2004 and July 31, 2004, respectively.  (*See id.* at 11.)

In every relevant way, Sara Bronfman's note was identical to her sister's,

but the addendum to her note specified that she made two transfers to

O'Hara—the first, for $750,000 on or about October 1, 2004, and the

second, for $250,000 on or about October 30, 2004.  (*See id.* at 13-15.)

Clare Bronfman's option agreement provided, in pertinent part:

> In conjunction with the . . . Loan [provided by Clare
> Bronfman to O'Hara], [O'Hara] hereby grants [Clare
> Bronfman] the right to purchase the [New Baltimore]
> Property for the sum of $1,000,000.  In this regard,
> the other applicable terms and conditions with respect
> to that Option are as follows:
>
> •    [O'Hara]  will  have  the  right  to  continue
>      marketing the [New Baltimore] Property — and,
>      in the event that he receives a *bona fide* "Offer"
>      concerning  same,  he  will  provide  [Clare
>      Bronfman] with a copy of that "Offer" . . . ;
>
> •    [Clare Bronfman] will have the right to "match"
>      the above-referenced "Offer" within five (5) days
>      of her receipt of same . . . ;
>
> •    If [O'Hara] accepts the above-referenced "Offer", he
>      must utilize all of the funds that he receives from the
>      sale of the [New Baltimore] Property to reduce the
>      amount that he owes to [Clare Bronfman] with respect
>      to the Loan . . . .

(*Id.* at 17-20.)  The option also required O'Hara to provide "the same type

18

of consultative services that he ha[d] previously provided to NXIVM

Corporation d/b/a/ Executive Success Programs [free of charge] during the

period of July 1, 2004 through December 31, 2006."[15]  (*Id.* at 18.)  Sara

Bronfman's option varied from that of Clare Bronfman in only the following

ways: (1) she had the option to buy the Saratoga property; and (2) O'Hara

granted her the right to purchase the Saratoga property for the sum of

$750,000.  (*See id.* at 22-25.)

The plain language of the option agreements clearly illuminates the

parties' intent—the options were never meant to alter O'Hara's obligation

to repay the loans as specified in the notes.  They were instead given as

further security for the considerable loans provided by the Bronfmans.

Under the plain terms of the options, if O'Hara sold the subject properties

to a third party, he was obligated to use whatever funds received "to

*reduce* the amount that he owe[d] [the Bronfmans] with respect to the

Loan[s]."  (Id. at 18, 24 (emphasis added).)  In the event that the

Bronfmans exercised their options and purchased the New Baltimore and

Saratoga properties for $1,000,000 and $750,000, respectively, O'Hara

---

[15] It is noted that whether the consideration given by the Bronfmans for the options was past or already executed is of no moment.  *See* N.Y. Gen. Oblig. Law § 5-1105 (McKinney 2010).

would still have owed them a certain sum of money pursuant to the notes. In the case of Clare Bronfman, that amount would equal only the interest due and owing because the option price of $1,000,000 equaled the principal loan amount; and, as to Sara Bronfman, the amount O'Hara would owe her would equal $250,000 (the principal loan amount of $1,000,000 minus the option price of $750,000) plus any interest due and owing.  (*See generally id.* at 9-11, 13-15, 17-20, 22-25.)  Thus, despite the fact that the notes were not stand-alone agreements, when read in conjunction with the options, O'Hara's obligation to repay the loans was unchanged, and any matters extrinsic to the agreements cannot be considered.  *See Teitelbaum Holdings*, 48 N.Y.2d at 56.

Turning to O'Hara's other arguments, while he claims that the interest rate he was obligated to repay under the notes was usurious—an assertion that relies upon the five percent (5%) interest rate set forth in the promissory notes and his promise, pursuant to the option agreements, to provide free consultative services to plaintiffs NXIVM and Executive Success Programs, Inc. from July 1, 2004 to December 31, 2006, (*see id.* at 9, 13, 18, 24; Def.'s SMF ¶ 9)—N.Y. General Obligations Law § 5-501(6) specifically excepts the sixteen percent (16%) maximum allowable rate of

interest on loans equaling or exceeding $250,000.  *See* N.Y. Gen. Oblig.

Law § 5-501(a) (McKinney 2011).  Finally, O'Hara's disingenuous assertion

that he was not obligated to repay the loans because the Bronfmans

"exercised their options" does not provide a basis for denying summary

judgment.  (Def.'s SMF ¶ 10.)  Despite the fact that the Bronfmans

attempted to exercise their options in 2006, O'Hara ignored their demand,

and the New Baltimore and Saratoga properties were never conveyed to

them.  (*See* Dkt. No. 118, Attach. 3 ¶¶ 27-28.)  Thus, partial summary

judgment is appropriate.

## V.  Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that the Bronfmans' motion (Dkt. No. 118) is **GRANTED**

in its entirety; and it is further

**ORDERED** that the Clerk shall enter judgment in favor of Clare

Bronfman and against O'Hara in the amount of **$1,000,000**—which

represents the unpaid principal loan amount—**plus** five percent (5%)

contractual interest per annum from the date that Clare Bronfman

transferred the principal to O'Hara through maturity of her promissory note,

**and** nine percent (9%) statutory interest per annum from the day following

21

maturity through the date of judgment; and it is further

**ORDERED** that the Clerk shall enter judgment in favor of Sara

Bronfman and against O'Hara in the amount of **$1,000,000**—which

represents the unpaid principal loan amount—**plus** five percent (5%)

contractual interest per annum from the date that Sara Bronfman

transferred the principal to O'Hara through maturity of her promissory note,

**and** nine percent (9%) statutory interest per annum from the day following

maturity through the date of judgment; and it is further

**ORDERED** that the Clerk close this case; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum-

Decision and Order to the parties.

**IT IS SO ORDERED.**

June 22, 2012
Albany, New York

Gary L. Sharpe
Chief Judge
U.S. District Court